[No. 46352-1-II.   Division Two.   July 6, 2016.]

THE STATE OF WASHINGTON, *Respondent*, v. DEVENNICE ANTOINE GAINES, *Appellant*.

*Skylar T. Brett* (of *Law Office of Skylar Brett*), for appellant.

*Mark E. Lindquist, Prosecuting Attorney*, and *Jason Ruyf, Deputy*, for respondent.

¶1 WORSWICK, J. — Devennice Gaines appeals his convictions and sentence for the second degree murder of Bruce Price and for unlawful possession of a firearm. In the published portion of this opinion, we hold that (1) the trial court did not deny Gaines's right to a fair and impartial jury when it denied his motion for a mistrial after jurors heard extrinsic information. In the unpublished portion of this opinion, we hold that (2) the trial court did not deny Gaines's right to a unanimous verdict when it dismissed a juror without examining his ability to be fair, (3) the prosecutor did not commit misconduct by attributing a statement to Gaines during closing argument, (4) the trial court did not violate Gaines's right to confront witnesses or his right to present a defense by limiting his cross-exami-

nation of three witnesses, and (5) the trial court did not err by denying his motion to dismiss the case with prejudice due to governmental misconduct, but that (6) the trial court erred by failing to conduct an individualized inquiry into his ability to pay his legal financial obligations (LFOs). Consequently, we affirm Gaines's convictions, but we remand to the trial court to consider Gaines's ability to pay discretionary LFOs. Finally, we exercise our discretion and waive appellate costs.

## FACTS

¶2 Gaines went to an after-hours party at a motorcycle club in Tacoma, accompanied by two female friends: Lakheea Thomas and Denise Green. During the party, Gaines had an altercation with Dashe Tate, who was in a wheelchair. Gaines knocked Tate out of his wheelchair. Several men then surrounded Gaines, shouting at him.

¶3 Thomas and Green left the club during the altercation, followed by Gaines. Outside, Price confronted Gaines for knocking Tate out of his wheelchair. Green heard Gaines tell her: "[B]itch, get to the car." 9 Verbatim Report of Proceedings (VRP) (Mar. 31, 2014) at 1025. She also remembered someone instructing her to "get in the car, something's about to go down," but she was not sure if it was Gaines who said this entire statement to her. 9 VRP (Mar. 31, 2014) at 1026. Witnesses then heard several gunshots. Price was shot multiple times and died. Soon after the shooting, two witnesses identified Gaines as the shooter.

¶4 The State charged Gaines with one count of second degree murder with a firearm enhancement,[1] one count of second degree felony murder committed in the course of

---

[1] RCW 9A.32.050(1)(a); former RCW 9.94A.533(3) (2011).

second degree assault with a firearm enhancement,[2] and one count of first degree unlawful possession of a firearm.[3]

¶5 After all the evidence and arguments were presented, and a few hours into jury deliberations, the presiding juror sent the following note to the trial court: "One juror said out loud that he read in the newspaper 2 years ago, the 'defendant has 2 priors.' Eight jurors heard this. We heard during the trial of [one felony]—it was stipulated. All have said this would not give prejudice. Is this a problem?" Clerk's Papers (CP) at 411. Gaines then moved for a mistrial.

¶6 The trial court decided to question the jurors. The court questioned each of the eight affected jurors individually, warning each juror not to mention their impressions of the case or their likely vote. Juror 11 told the court that juror 2 had said something like: " 'Why would he do it? He has two strikes against him already. Why would he do it. I don't see why he would do it.' " 14 VRP (Apr. 10, 2014) at 1718. Other jurors said variously that juror 2 said something about Gaines's multiple felonies, "two strikes," or "three strikes." 14 VRP (Apr. 10, 2014) at 1735, 1743. The jurors satisfied the court that they had quickly recognized the problem in hearing the statement and had avoided further tainting deliberations because of it. Some jurors reported that other jurors chastised juror 2 for bringing extraneous facts into the case.

¶7 In considering whether to declare a mistrial, the trial court said: "I got the feeling that [the jurors] were very adamant . . . that they could follow [the instructions] that they would be impartial." 14 VRP (Apr. 10, 2014) at 1778. The court deferred ruling on Gaines's motion for a mistrial.

¶8 The trial court dismissed juror 2, then impaneled the alternate juror and instructed the entire reconstituted jury

---

[2] RCW 9A.32.050(1)(b); former RCW 9.94A.533(3).

[3] RCW 9.41.040(1)(a). Gaines stipulated that he had a prior felony for purposes of this charge.

to begin deliberating afresh. Specifically, it instructed the jury that "[d]uring this trial juror number 13 was an alternate juror. Juror number 13 has now been seated as a juror in this case. You must disregard all previous deliberations and begin deliberations anew." CP at 473. The trial court then denied Gaines's motion for a mistrial.

¶9  The jury found Gaines guilty of second degree murder and second degree felony murder. These charges merged. The jury also found him guilty of first degree unlawful possession of a firearm. It further found the aggravating factor that Gaines was armed with a firearm. Gaines appeals.

## ANALYSIS

¶10  Gaines argues that the trial court abused its discretion and denied his constitutional right to a jury trial when it denied his motion for a mistrial based on juror misconduct. We disagree.

### A. *Standard of Review*

¶11 The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee a fair trial by an impartial jury. "The right of trial by jury means a trial by an unbiased and unprejudiced jury, free of disqualifying jury misconduct." *State v. Tigano*, 63 Wn. App. 336, 341, 818 P.2d 1369 (1991).

¶12  We review a trial court's investigation of juror misconduct for abuse of discretion. *State v. Earl*, 142 Wn. App. 768, 774, 177 P.3d 132 (2008). Similarly, we review a trial court's decision denying a motion for a mistrial based on juror misconduct for an abuse of discretion. *State v. Balisok*, 123 Wn.2d 114, 117, 866 P.2d 631 (1994). A trial court abuses its discretion when it acts on untenable grounds or its ruling is manifestly unreasonable. *State v. Barnes*, 85 Wn. App. 638, 669, 932 P.2d 669 (1997).

¶13 "As a general rule, the trial courts have wide discretionary powers in conducting a trial and dealing with

irregularities which arise." *State v. Gilcrist*, 91 Wn.2d 603, 612, 590 P.2d 809 (1979). "[A] mistrial should be granted only when the defendant has been so prejudiced that nothing short of a new trial can insure that defendant will be tried fairly." *Gilcrist*, 91 Wn.2d at 612. Only errors that may have affected the outcome of the trial are prejudicial. *Gilcrist*, 91 Wn.2d at 612.

## B. *Extrinsic Evidence*

¶14 Gaines argues that the trial court erred by denying his motion for a mistrial after the jury heard extrinsic information. Specifically, Gaines argues that the trial court abused its discretion by applying the wrong legal standard: it subjectively investigated the jurors' ability to be fair, rather than objectively inquiring into whether any prejudice could result. The State argues that Gaines draws this objective standard from an inapplicable line of cases and, therefore, the trial court did not err. We agree with the State.

¶15 Consideration of novel or extrinsic evidence constitutes juror misconduct and can require a new trial. *Balisok*, 123 Wn.2d at 118. "Extrinsic evidence" is information outside what is admitted at trial. *Balisok*, 123 Wn.2d at 118. We may presume prejudice on a showing of misconduct. *State v. Depaz*, 165 Wn.2d 842, 856, 204 P.3d 217 (2009). But that "presumption can be overcome by an adequate showing that the misconduct did not affect the deliberations." 165 Wn.2d at 856.

¶16 Gaines relies on cases which involve a key factual distinction from this case. In all the case law Gaines cites on this point, the trial court was ruling on a post-verdict motion.[4] By contrast, here the jury notified the

---

[4] *See, e.g., Breckenridge v. Valley Gen. Hosp.*, 150 Wn.2d 197, 205 n.13, 75 P.3d 944 (2003); *Gardner v. Malone*, 60 Wn.2d 836, 841, 376 P.2d 651, 379 P.2d 918 (1962); *Turner v. Stime*, 153 Wn. App. 581, 589-90, 222 P.3d 1243 (2009); *State v. Johnson*, 137 Wn. App. 862, 870, 155 P.3d 183 (2007); *State v. Boling*, 131 Wn. App. 329, 331-32, 127 P.3d 740 (2006); *Tigano*, 63 Wn. App. at 338.

trial court of a potential issue on the first day of deliberations, before reaching a verdict.

¶17 When a jury hears extrinsic information and where that extrinsic information *inheres in the verdict*, the trial court must make an objective inquiry, asking whether the evidence could have affected the jury's verdict. *Breckenridge v. Valley Gen. Hosp.*, 150 Wn.2d 197, 204, 75 P.3d 944 (2003); *State v. Johnson*, 137 Wn. App. 862, 870, 155 P.3d 183 (2007). This objective test exists because trial courts are not allowed to impeach a jury's verdict by probing into the subjective mental processes of the jurors. *Gardner v. Malone*, 60 Wn.2d 836, 840-41, 376 P.2d 651, 379 P.2d 918 (1962). After a jury renders a verdict, it is improper for a trial court to ask jurors about their subjective reasoning—thus, the trial court may not ask whether the extrinsic evidence subjectively influenced the jury's verdict, and it must instead apply the objective test. *Gardner*, 60 Wn.2d at 840-41.

¶18 This objective standard applies only after a verdict has been rendered. A "trial court may not consider *post-verdict* juror statements that inhere in the verdict when ruling on a new trial motion." *Breckenridge*, 150 Wn.2d at 204 (emphasis added). The logic underlying the objective test does not apply before the jury reaches a verdict, such as here, because there is no verdict to impeach. In other words, a trial court may ask questions of the jurors' subjective ability to disregard extrinsic information before there is a verdict to potentially impeach. Nor is there a reason the trial court must rely on the objective standard of whether the information could have impacted the verdict, because there is not yet a verdict. Neither case law nor logic requires us to apply the objective test where, as here, there is no verdict to impeach.

¶19 Gaines argues only that the trial court erred by failing to inquire objectively into the potential prejudice resulting from the extrinsic information. He does not otherwise argue that the trial court abused its discretion when

it denied him a mistrial after determining that each juror could be fair. He provides no argument or authority for the proposition that the trial court abused its discretion, apart from arguing that it applied the wrong legal standard. Thus, his argument fails.

¶20 Gaines also argues that the trial court never instructed the jurors to disregard extrinsic information, but this is inaccurate. The jurors were instructed to consider only the evidence in the case. Moreover, when the trial court replaced juror 2 with the alternate juror, it instructed the newly constituted jury to "disregard all previous deliberations and begin deliberations anew." CP at 473. Thus, taking the instructions as a whole, the trial court instructed the jury to consider only the evidence admitted at trial, and to disregard their deliberations that had been tainted by extrinsic information. Gaines's argument fails.

¶21 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

LEE and MELNICK, JJ., concur.

Review denied at 186 Wn.2d 1028 (2016).