IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>Respondent,<br><br>v.<br><br>KALI ADELBAI ETPISON,<br><br>Appellant. | No. 80103-1<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br>FILED: September 16, 2019 |

CHUN, J. — A jury convicted Kali Adelbai Etpison of fourth degree assault, malicious mischief, obstructing a law enforcement officer, intimidating a witness, and harassment. On appeal, Etpison claims that (1) he received ineffective assistance of counsel in connection with propensity evidence, (2) juror misconduct in deliberations prejudiced him and denied him his constitutional right to a fair trial, (3) the trial court erred in excluding evidence of his 17-year military career as background evidence, (4) insufficient evidence supports his conviction for intimidation of a witness, and (5) the trial court erred in imposing a $200 criminal filing fee, a Department of Corrections monthly supervision assessment fee, a 12 percent interest provision in the Judgment and Sentence, and a $100 DNA sample fee. We remand the Judgment and Sentence for the trial court to strike the legal financial obligations except for the $100 DNA sample fee. We affirm in all other respects.

I.
BACKGROUND

On November 29, 2017, the Bremerton Police Department arrested Etpison after he broke objects and a door inside his home with a baseball bat. Etpison had also allegedly pushed and slapped his two sons.

Etpison did not comply with the police's commands as they tried to enter his home. They ultimately used a Taser device to subdue him. After police detained Etpison, Etpison's wife, Jasmine Etpison,[1] told police that Etpison had hit her several days prior, leaving bruises that were still visible.

From jail, Etpison made a recorded telephone call to Jasmine. He asked her if she had called the police, spoke a phrase to her in Palauan[2] (translated by the State's interpreter as, "You better run. When I get out you will feel the consequences"), and then hung up.

The State charged Etpison with assault in the third degree for hitting Jasmine several days prior to his arrest, two counts of assault in the fourth degree for slapping and pushing his two sons, malicious mischief in the third degree, obstructing a law enforcement officer, intimidating a witness, and harassment. A second amended information added an alternative charge of assault in the fourth degree relating to Jasmine.

Pretrial, the State moved to exclude any reference to Etpison's military service. In opposition, Etpison argued the evidence served as background information relating to his relationship with his wife, because the two met while he

_____

[1] For clarity, below, we refer to Jasmine Etpison by her first name. We intend no disrespect.

[2] Etpison and his wife speak Palauan fluently.

2

was stationed at a military base. The trial judge granted the State's motion, deeming the evidence irrelevant because it did not relate to the charges or the defense's case.

At trial, Jasmine testified that on Thanksgiving Day, November 23, 2017, Etpison hit her on her right arm three or four times, which left the bruising that officers saw when they arrived at Etpison's home several days later.

Jasmine also testified that Etpison's telephone call from jail caused her to fear for her physical safety and gave her concerns about cooperating with law enforcement because of what he had said to her in Palauan. The State's interpreter testified that speakers usually use the Palauan phrase at issue threateningly, and that it means the receiving person will feel the consequences physically, mentally, or emotionally.

> During deliberations, the jury submitted the following question to the court:
>
> It came to our attention that one of the jurors looked at the court docket to see what charges he (the defendant) was being charged with. Is the [sic] a problem for us or can we proceed[?] It was during jury selection and it was shared he was still in jail[.]

After conducting an inquiry, the trial court determined one juror had looked at the court docket and shared information that Etpison remained in jail pending trial. The trial court dismissed the juror who looked at the court docket and shared the information, and dismissed an additional juror who said they could not ignore the fact that Etpison remained in jail. The court then individually questioned the remaining jurors, asking them if they could disregard the improperly introduced information, if they understood Etpison remains innocent

3

until proven guilty, and if they believed the jury as a whole could move forward. All the remaining jurors answered in the affirmative. The trial court added the alternate juror and ordered the jurors to begin deliberations anew.

The jury convicted Etpison of fourth degree assault, malicious mischief, obstructing a law enforcement officer, intimidating a witness and harassment. The jury found Etpison not guilty of the two charges of fourth degree assault against his sons. The trial court imposed a $200 criminal filing fee, community supervision fees, a 12 percent interest provision, and a $100 DNA sampling fee in the Judgment and Sentence. Etpison appeals.

## II.
## ANALYSIS

### A. Ineffective Assistance of Counsel

Etpison argues that, in violation of ER 404(b), the trial court admitted evidence that he hit Jasmine on November 23, 2017, resulting in bruising on her right arm. He characterizes this information as propensity evidence and claims that his lawyer's failure to object to it and failure to propose a limiting instruction constituted ineffective assistance. But the State correctly explains that the evidence of the bruising constitutes direct evidence relating to the assault charge for the date range of November 21 to November 28, 2017. And given the admissibility of the evidence, trial counsel did not perform ineffectively.

The United States and Washington Constitutions guarantee criminal defendants effective assistance of counsel. U.S. CONST. amend. VI; CONST. art. I, § 22. Under Strickland v. Washington, 466 U.S. 668, 686, 104 S. Ct. 2052

(1984), a defense lawyer's deficient performance resulting in prejudice entitles a defendant to reversal of their conviction.

Evidence must be relevant to be admissible; evidence is relevant where it makes the existence of a fact of consequence in an action more or less likely. ER 401. But evidence of other crimes, wrongs, or acts is inadmissible to prove the character of a person to show action in conformity with those previous acts. ER 404(b).

Etpison argues that the evidence of the assault on Thanksgiving Day constitutes improper propensity evidence supporting the conviction of fourth degree assault. But this argument confuses the charges against Etpison. The State did not charge Etpison with assault against Jasmine for his actions taken on the night of November 29, 2017. Instead, the State charged Etpison with third degree assault over a date range of November 21-28, 2017, and in the alternative, charged him with fourth degree assault over the same date range. The court instructed the jury to consider the fourth degree assault charge against Jasmine for the date range of November 21-28, 2017, and not for November 29, 2017. Thus, Jasmine's testimony that Etpison hit her three or four times on the back of the arm on Thanksgiving Day, November 23, 2017, was direct evidence to support the fourth degree assault charge. Given the admissibility of the evidence, the lack of an objection on propensity grounds or a proposed limiting instruction does not constitute ineffective assistance of counsel.

B. Juror Misconduct

Etpison argues that juror misconduct denied him of his right to a fair trial. The State asserts that Etpison waived this argument by agreeing to proceed after witnessing the jury affirm that extrinsic evidence would not affect their deliberations or his presumption of innocence. Assuming, without deciding, that Etpison did not waive the issue, we conclude that the trial court did not abuse its discretion by allowing trial to proceed after the juror misconduct; it dismissed the juror who committed misconduct and the juror who could not ignore extrinsic information, conducted a proper inquiry of the jury's ability to disregard extrinsic information, and ordered that deliberations begin anew.

The law guarantees a criminal defendant to a fair trial by an impartial jury. U.S. CONST. amend. VI; CONST. art. I § 22. A jury must be unbiased, unprejudiced, and free of disqualifying jury misconduct for a defendant to receive a constitutionally sufficient jury trial. State v. Gaines, 194 Wn. App. 892, 896, 380 P.3d 540 (2016). Where a juror considers information outside of properly admitted evidence, jury misconduct occurs. Gaines, 194 Wn. App. at 897.

A court presumes prejudice upon a showing of misconduct, but "that presumption can be overcome by an adequate showing that the misconduct did not affect the deliberations." Gaines, 194 Wn. App. at 897 (internal quotations and citation omitted). Before a jury enters a verdict, "a trial court may ask questions of the jurors' subjective ability to disregard extrinsic information," and instruct the jury to consider only evidence admitted at trial and not any previously entered extrinsic information. Gaines, 194 Wn. App. at 898-899. In Gaines, the

court concluded that this procedure could properly cure prejudice after a juror introduced extrinsic information in the middle of deliberations. 194 Wn. App. at 895, 898.

We review a trial court's investigation of juror misconduct for an abuse of discretion. Gaines, 194 Wn. App. at 896. "A trial court abuses its discretion when it acts on untenable grounds or its ruling is manifestly unreasonable." Gaines, 194 Wn. App. at 896. We similarly review the conclusions from an investigation of juror misconduct, and a trial court's decision to excuse or not excuse jurors, for abuse of discretion. State v. Earl, 142 Wn. App. 768, 776, 177 P.3d 132 (2008).

Here, during deliberations, a juror introduced extrinsic facts by informing the rest of the jury that Etpison remained in jail during trial. That juror was dismissed. The court individually questioned the other jurors and dismissed another juror who indicated they could not ignore that Etpison remained in jail. The remaining jurors all assured the court that the extrinsic information would not affect their deliberations. The trial court added the alternate juror and then ordered the jurors to disregard all previous deliberations and begin deliberating anew. The court then reasoned that no independent grounds for a mistrial remained.

By conducting this inquiry, the trial court reaffirmed the jury's subjective ability to disregard extrinsic information, as the court did in Gaines. 194 Wn. App. at 898. Because this questioning took place before the jury reached its verdict but after deliberations began, a subjective inquiry sufficed. Gaines, 194

7

Wn. App. at 898. Further, as in Gaines, the trial court ordered the jury to begin deliberations anew, ignoring any extrinsic information. 194 Wn. App. at 899. Thus, the trial court acted within its discretion in conducting its investigation and reaching the conclusion that there were no grounds for mistrial after taking such action.

C. Background Evidence

Etpison claims the trial court improperly excluded evidence of his 17-year military career. He characterizes the information as proper background evidence. The State claims the court did not abuse its discretion because the evidence was not probative. We agree with the State.

A defendant may, in some instances, introduce information about their pertinent character traits in a criminal trial. ER 404(a). But evidence must be relevant to be admissible, meaning it must make the existence of a fact of consequence to the action more or less likely. ER 401. And this court has previously held that a defendant may not introduce background evidence when it does not speak to a defendant's pertinent character trait. State v. O'Neill, 58 Wn. App. 367, 369-370, 793 P.2d 245 (1996) (disallowing a defendant from introducing their lack of prior convictions as a means of bolstering credibility against a driving while intoxicated charge).

We review evidentiary rulings for abuse of discretion. State v. Pirtle, 127 Wn.2d 628, 648, 904 P.2d 245 (1995). A trial court abuses its discretion when its decision is manifestly unreasonable or is based on untenable grounds or reasons. State v. Brown, 132 Wn.2d 529, 572, 940 P.2d 546 (1997).

Etpison argues that his military history provides background information relating to how he and Jasmine initially met ten years ago – on a military base. But Etpison does not connect their meeting to a fact at issue in the case. Nor does Etpison demonstrate how his military history might relate to a pertinent character trait. Given this failure to establish the relevance of the military history, the trial court did not abuse its discretion by excluding it.[3]

Assuming the court erred by excluding the evidence, the error was harmless. "[E]rror is harmless unless, within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected." State v. Gresham, 173 Wn.2d 405, 425, 269 P.3d 207 (2012) (internal quotations omitted). Information regarding Etpison's military career did not make any fact at issue in the case more or less probable. Etpison has not demonstrated how introduction of the background evidence regarding his meeting Jasmine at a military base would have assisted the jury in weighing the charges against him.

D. Insufficient Evidence of Witness Intimidation

---

[3] Defense counsel invokes State v. Renneberg, 83 Wn.2d 735, 522 P.2d 835 (1974), and State v. Brush, 32 Wn. App. 445, 648 P.2d 897 (1982), as examples supporting their position that background evidence of Etpison's military career should be admissible. Both cases are inapposite. In Renneberg, the defendant introduced evidence of her work experience, college education, and participation in a glee club, drill team, and pep club as a means of painting a picture of herself as a person unlikely to commit grand larceny. 83 Wn.2d at 738. Here, trial counsel's stated purpose for introducing evidence of Etpison's military career had no bearing on his likelihood to have committed the accused crimes; indeed, trial counsel conceded a jury might properly find the history had no such bearing on their determination of guilt. In Brush, the defendant was charged with arson of his own home. 32 Wn. App. at 446-447. Brush introduced evidence of his employment history, salary, and financial dealings as a means of rebutting the State's theory that he had a financial motive for arson. Brush, 32 Wn. App. at 451-452. While this information might be characterized as background evidence, it was probative in rebutting the State's theory that Brush had a financial motive to burn down his own home. By contrast, Etpison advances no similar argument that his military history makes his commission of the crimes charged against him less likely.

Etpison argues that insufficient evidence supports his conviction of witness intimidation, defined by RCW 9A.72.110. The State argues sufficient evidence supports the conviction. We agree with the State.

In determining whether sufficient evidence supports a conviction, we view the evidence in the light most favorable to the State and ask whether any rational trier of fact could have found guilt beyond a reasonable doubt. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). We defer to the jury on issues of conflicting testimony, credibility of witnesses, and persuasiveness of the evidence. State v. Thomas, 150 Wn.2d 821, 874-875, 83 P.3d 970 (2004).

Here, we view the evidence in the light most favorable to the State and ask whether a rational trier of fact could have found beyond a reasonable doubt that Etpison (1) made a threat, (2) to a current or prospective witness, and (3) by use of a threat, attempted to:

    (a) Influence the testimony of that person;

    (b) Induce that person to elude legal process summoning [them] to testify;

    (c) Induce that person to absent [themselves] from such proceedings, or

    (d) Induce that person not to report the information relevant to a criminal investigation or the abuse or neglect of a minor child, not to have the crime or the abuse or neglect of a minor child prosecuted, or not to give truthful or complete information relevant to a criminal investigation or the abuse or neglect of a minor child.

RCW 9A.72.110(1). Etpison argues the insufficiency only of the State's demonstration he made a threat and that the threat was an attempt to induce or

influence Jasmine in connection with the case. Etpison does not dispute that Jasmine was a current or prospective witness.

1. Threat

Viewing the evidence in the light most favorable to the State, a reasonable trier of fact could have found that Etpison's telephone call from jail constituted a threat.

A "threat" within the meaning of RCW 9A.72.110(1) is a direct or indirect communication of the intent to: Immediately use force against any person who is present at the time; to cause bodily injury in the future to the person threatened; to cause physical damage to the property of a person other than the actor, or; to do any other act which is intended to harm substantially the person threatened or another with respect to her health, safety, business, financial condition, or personal relationships. RCW 9A.72.110(3)(a), RCW 9A.04.110(28)(a), (b), (j).[4]

Shortly after the police arrested Etpison and took him to jail, Etpison made a recorded telephone call to Jasmine. On the call, Etpison asked if she had called the police. Next, Etpison spoke a phrase in Palauan to Jasmine. According to the State's interpreter, Etpison told his wife, "You better run. When I get out you will feel the consequences." Etpison disputed this characterization at trial, but we must view the facts in the light most favorable to the State.

The State's interpreter also testified that speakers usually use the statement threateningly, and that it means the receiving person will feel the

---

[4] RCW 9A.72.110(3)(a)(ii) incorporates by reference RCW 9A.04.110(27), which was amended by 2011 c 166 c § 2, changing subsection (27) to (28).

consequences physically, mentally, psychologically, or emotionally. Given this testimony, a reasonable trier of fact could find beyond a reasonable doubt that by his statement, Etpison communicated an intent to substantially harm Jasmine sufficient to constitute a threat.

2. RCW 9A.72.110(1)

The State must also have demonstrated that by use of a threat, Etpison attempted to achieve one of the four outcomes listed in RCW 9A.72.110(1). Viewing the evidence in the light most favorable to the State, a reasonable trier of fact could have found that Etpison attempted to influence Jasmine's testimony or induce her not to testify against him, participate in legal proceedings, or report information relevant to a criminal investigation, satisfying any of RCW 9A.72.110(1)(a)-(d).[5]

After asking whether she had called the police, Etpison told Jasmine that she "better run." He also said, "When I get out you will feel the consequences." This can reasonably be interpreted as an attempt to influence or induce Jasmine not to testify against him, participate in legal proceedings, or report information relevant to the criminal investigation. First, the threatening statement was made in the context of Etpison asking whether Jasmine had called the police. Second,

---

[5] In support of his argument, Etpison cites State v. Brown, 162 Wn.2d 422, 430, 173 P.3d 245 (2007). But in that case, the court found there was insufficient evidence that the defendant had violated RCW 9A.72.110(1)(a), because the defendant's threat to a third-party victim that she would "pay" if she went to the police was an attempt to prevent her from providing information to the police and not an attempt to influence testimony. Here, however, Etpison threatened Jasmine without specifying that he would hurt her if she went to the *police*, so viewing the evidence in the light most favorable to the State, his statement can be interpreted as attempting to induce her not to testify, participate in legal proceedings, or report information relevant to a criminal investigation.

if Jasmine "ran," she would potentially be unavailable to so testify, participate, or report information. And third, the "consequences" provided an incentive not to so testify, participate, or report information. From this, a jury could reasonably infer that Etpison, by use of a threat, attempted to achieve any one of the four outcomes listed in RCW 9A.72.110(1).

Because a rational trier of fact could have found the foregoing elements beyond a reasonable doubt, Etpison's claim of insufficiency fails.

E. Legal Financial Obligations

Etpison claims that, in the Judgment and Sentence, the trial court erred in imposing a $200 criminal filing fee, a Department of Corrections monthly supervision assessment fee, and by including a 12 percent interest provision in the Judgment and Sentence. The State concedes error on these. We agree.

Under State v. Ramirez, 191 Wn.2d 732, 426 P.3d 714 (2018), discretionary costs may not be imposed on indigent defendants. A defendant's indigence is determined at the time of sentencing. RCW 10.01.160(3). The trial court recognized Etpison's indigence when it allowed him to pursue his appeal at public expense.

The $200 criminal filing fee is discretionary. Ramirez, 191 Wn.2d at 748. The community supervision fees are also discretionary. State v. Lundstrom, 6 Wn. App.2d, 388, note 3, 429 P.3d 1116 (2018). The interest accrual provision of the Judgment and Sentence pertaining to non-restitution legal financial obligations are also discretionary. RCW 10.82.090 disallows accrual of interest on non-restitution legal financial obligations imposed as of June 7, 2018, and

subsection (2)(a) allows the court to waive interest on the portions of non-restitution legal financial obligations imposed before June 7, 2018.

Finally, Etpison argues that we should strike the $100 DNA sample fee. However, the $100 DNA sampling fee is mandatory for offenders whose DNA has not been previously collected as a result of a prior conviction. RCW 43.43.7541. Etpison has no prior convictions. Hence, the trial court properly imposed the DNA sampling fee

Affirmed and remanded to strike the criminal filing fee, community supervision fees, and interest accrual provision.

_Chun, J._

WE CONCUR: