IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 86743-1-I |
| | ) | |
| Respondent, | ) | ORDER GRANTING MOTION FOR |
| | ) | RECONSIDERATION, WITHDRAWING |
| v. | ) | OPINION FILED NOVEMBER 3, 2025, |
| | ) | AND |
| JESSE SCOTT WILSON | ) | SUBSTITUTING OPINION |
| | ) | |
| Appellant. | ) | |

The respondent, State of Washington, has filed a motion for reconsideration of the opinion filed on November 3, 2025. The court has determined that the motion should be granted, the opinion withdrawn, and a substitute opinion filed; now, therefore, it is hereby

ORDERED that the motion for reconsideration is granted; and it is further

ORDERED that the opinion filed on November 3, 2025, is withdrawn; and it is further

ORDERED that a substitute opinion shall be filed.

PANEL: Judges Fearing, Feldman and Smith.

_____Fearing, J._____

_Feldman, J._____     ___Smith, J._____

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| THE STATE OF WASHINGTON, | No. 86743-1-I |
| Respondent, | |
| v. | DIVISION ONE |
| JESSE SCOTT WILSON, | UNPUBLISHED OPINION |
| Appellant. | |

FEARING, J.[1] — A jury convicted Jesse Scott Wilson on two counts of possession with intent to distribute. CP 105; RP 791. Wilson argues the trial court erred when it overruled his GR 37 objection because an objective observer could view race as a factor in the State's preemptory challenge of juror 45. BOA 10. He also argues the trial court erred in prohibiting him from possessing defensive firearms when he was convicted of non-violent felonies. BOA 54. We reverse and remand.

I

On May 18, 2020, a Lynnwood police officer arrested Wilson in the parking lot of a hotel. RP 538-39. The arresting officer searched Wilson incident to arrest. RP 541. Wilson then told the officer the backpack he wore held methamphetamine

---

[1] Judge Fearing is serving in Division One of this court pursuant to RCW 2.06.040.

and heroin.  RP 541.  The officer found approximately $1,500 dollars in cash on Wilson's person. RP 542.  The backpack contained methamphetamines, heroin, and a scale.  RP 544.  In the hotel room where Wilson was staying, the officer found a lockbox containing approximately $12,000 in cash, methamphetamine, and heroin.  RP 569, 575.  The State charged Wilson with possession with intent to deliver heroin and methamphetamines.  CP 3.

A

Before questioning the jury panel, the court, with input from counsel, submitted a general questionnaire to the venire, which questionnaire included queries about personal drug usage and experiences with friends or family using drugs.  RP 34, 36.  The questionnaire also asked about the juror's strong feelings about law enforcement and the juror's religious or philosophical views regarding possession with intent to deliver charges.  Pre-trial Exhibit 18 (Ex. 18).

The parties conducted jury selection over two days: February 6 and February 7, 2024.  RP 292; RP 356.  The court gave each side two rounds of alternating 20-minute blocks to question the entire jury panel and individually question jurors.  RP 291.

On February 6, 2024, the parties questioned a first jury panel.  RP 279 (date); RP 292.  In the State's first block of time, the State asked: "Do folks feel differently about a user of drugs than someone who sells drugs to other people?"  RP 305.  Juror 28 nodded their head and stated: "I feel they're more victim of circumstance and the drugs themselves than those who sell drugs."  RP 305.  The State asked if other jurors agreed with Juror 28.  Jurors 16, 4, 19, 11, 27, 17, 25,

2

9, 20, 13, 14, and 24 expressed agreement. RP 305-306. The State concluded its time questioning Juror 3 "what kinds of things would be clear indicators to you that somebody is a seller of drugs." RP 307.

In the State's second block of time, the State questioned Juror 18 about what evidence the juror would need to see to convict. RP 324. Juror 18 did not believe their bias against law enforcement would affect their ability to be fair and impartial. RP 324. The State also followed up with Jurors 4, 25, and 27 (RP 325-328). The State moved for cause against Juror 27 because Juror 27 responded affirmatively to the question, "You feel that you would treat [the] evidence differently because they are law enforcement?" RP 326. The court granted the motion and excused the juror. RP 327-28.

The State also moved for cause to excuse Juror 16, who stated "I think I would hold [law enforcement] to a different standard just because of how I feel it's been lacking, I guess. And the lack of trust that I feel from law enforcement." RP 330. Wilson objected, noting "[e]veryone is going to come into a case with certain biases. There's no indication that the bias would be specific or that it could not be set aside." RP 330. The court ultimately excused Juror 16. RP 330.

The State next questioned Juror 17 about what evidence they would expect the State to present for a charge of possession with intent to deliver. RP 331. Juror 17 indicated they expected corroborating evidence from all witness testimony:

> PROSPECTIVE JUROR NUMBER 17: . . . And I guess for the intent to deliver, I guess that's a little – might be situational, I guess, depending on what evidence is presented. And – and if an

3

officer is testifying, then I would like to see some corroboration to the testimony.

    [State]: Okay. You said if an officer is testifying. Is that because of your feelings with law enforcement, or can you elaborate on that a little bit?

    [18]: Oh. Well, no. If an officer is testifying or if somebody in the public is testifying, whoever is on – on – on the stand that is testifying, because it's about facts and data.

RP 332. Juror 9 similarly agreed with Juror 17: "[W]hether or not the person testifying is an officer, as opposed to some member of the public, I would certainly take their testimony into account, but also wish to have some type of concrete, you know, facts or evidence that had been gathered that perhaps, you know, further supported, sort of, the testimony that was being given." RP 332.

The State also asked Juror 28 about their feelings on decriminalization of drugs. RP 335.

    [State]: And given that this is a drug possession case with intent to deliver, do you feel that your personal viewpoints on the law would impact your ability to be fair and impartial in this case and follow instructions?

    [28]: I don't think so. No.

RP 336.

B

During the morning of February 7, 2024, the parties questioned a second panel of prospective jurors. RP 356. Before questioning, Wilson asked the court its preference on asserting GR 37 objections to the State's challenges to jurors. RP 365. The court responded that it would entertain GR 37 demurrals during peremptory challenges. RP 365-66.

According to the State, jurors 36, 43, 45, and 46 of the second panel expressed a religious or philosophical perspective that may make them

4

uncomfortable to sit on a drug case.  The State queried each of these jurors during its first block of time.  RP 379.

The State asked Juror 45, an Asian[2], if they could set aside their bias, to which Juror 45 responded it was their first time on a jury, "so I don't know exactly what to expect."  RP 380-81.  Juror 45 is male, but prefers the pronoun "they."  The State moved to excuse Juror 45, and Wilson objected.  RP 380.  The court inquired into whether Juror 45 could set aside their bias:

> THE COURT:  So if the Court instructed you on what the law is with regard to Possession with the Intent to Distribute Drugs, and you disagreed with it, would you still be able to apply the facts to the law and put aside the fact you disagree with the law that the Court gave you?
> [45]:  I think I could definitely do my best to understand the law and apply the facts. I could definitely do that.  When you say apply the facts, can you just –
> THE COURT: Sure
> [45] -- spell it out for me a little bit more?
> THE COURT:  The question the Court has is whether you will ignore the law and instead make a decision based on what you think the law should be
> [45]:  Oh, I see.  So I think my – a juror's obligation is to – is to decide whether there's reasonable doubt, right?  Like, I think I can do that.  I can, you know, look at the law.  See if there's reasonable doubt or not and apply it that way, if that's what you're saying.
> THE COURT:  And in making that determination, would you be able to put aside your personal feelings about drug laws and enforce the law – well, and apply the law that is given to you by the Court even if you disagree with it?
> [45]:  I mean, I would have the ability to do that, yes.

RP 383-385.  The court denied the State's motion for cause.  RP 385.

---

[2] Wilson states in his briefing that Juror 45 was South Asian. The State agrees Juror 45 was Asian, but not necessarily South Asian. We do not consider this disagreement relevant to our decision and proceed on the assumption that Juror 45 is Asian as self-reported in their juror questionnaire.

During its second block of time, the State also asked Juror 45 their feelings about law enforcement:

> [State]: So if there – in cases, you may have a civilian testifying, and you may have a law enforcement officer testifying. That's not necessarily the case in this trial. But I'm just saying generally, would you take – would you assess the credibility of a law enforcement officer differently than, say, just a person on the street?
>
> [45]: I would weigh the motivations of each person. So in that sense, I would – yeah, in that sense, I would look at it differently.
>
> [State]: And when you say you're weighing the motivations, what do you believe the motivations of law enforcement to be?
>
> [45]: To do their job.
>
> [State]: And what is that?
>
> [45]: Their job is to enforce the law.
>
> [State]: Okay. Would you say that you have a strong negative feeling of law enforcement?
>
> [45]: Yeah, I have – I would say I have a – yeah.
>
> [State]: Would you agree that you have a – a bias against law enforcement?
>
> [45]: Yes.
>
> [State]: And in assessing credibility, the Court will be ordering you to avoid your bias and to set aside your bias when evaluating this case. Do you believe that you can follow that instruction, knowing that you have a bias against law enforcement?
>
> [45]: So is it – I guess – I think it's fair to try to understand the motivations of witnesses, whoever they are. I think the fact that their job is to be a police officer comes into that. I don't think that seems different, for me, from – you know, trying to understand witness testimony from any other kind of witness.
>
> So I might have some – I guess what I'm saying is I might have some negative bias. But I think, like, I would – I'm not sure how that matters in this case.
>
> [State]: So I'm going to ask this a little bit differently.
>
> [45]: Yeah.
>
> [State]: Do you think you could put aside whatever bias you have – put it to the side when you walk into the courtroom and just approach this case with a fair and neutral perspective?
>
> [45]: Does that – yeah, I think I could as long as – you know, as long as I can look at the, you know, motivations of whatever witness and weigh that. I – yes. Am I allowed to do that as a juror?
>
> [State]: What would you be looking for in terms of being able to weigh their motivation?
>
> THE COURT: One more minute, counsel.

6

[45]: I think I would just listen to what they have to say and have in mind that their job is to enforce the law, and –

[State]: Would you require corroboration or extra evidence because it is a law enforcement officer testifying?

[45]: Not any different from any other witness. Like I said before, I don't think – I don't think witness testimony by itself is very compelling in the first place.

RP 427-430. The State did not move to excuse Juror 45 during the second block of questioning. RP 430.

C

On February 7, 2024, the parties exercised peremptory challenges. RP 451. The State moved to excuse Jurors 18, 25, 36, and 45. RP 452-56. The court denied excusing Juror 36 because "[t]hey've been in the panel the last few times the State has accepted." RP 456. Wilson excused Juror 35 with a peremptory challenge. RP 456.

Wilson objected under GR 37 to the State's peremptory challenge of Juror 45. RP 456. In rationalizing its motivation to excuse juror 45, the State explained:

And we did spend quite a bit of time questioning Juror Number 45, who was our in-person juror and [they] gave quite a few reasons why [they] did not trust the – or had a bias against the law enforcement officers. [They] even stated specifically that [they have] a bias against law enforcement officers. [They] stated that [they] would factor in the law enforcement's motivations and expect more from them. However, [they] did say that [they] wouldn't specifically need more evidence because [they] needed more evidence from all witnesses in general.

[They] stated that [they] did not think that drug possession should be a crime at all, and [they were] unsure that [they] could follow the law. [They were]n't sure – because [they have] never been on a jury before so [they were]n't sure how [they] would react to that situation, but [they] would need to hear more. [They] stated that [they] would need to know what kind of cases come into the courthouse regarding drug cases in general. And so I think there

was a long list of reasons why the State is choosing to remove Juror Number 45.

RP 457. Wilson responded:

> One of the enumerated reasons for a – a reason to be presumptively – it's presumptively invalid to have one's experiences – past experiences with law enforcement officers be one of the considerations, including expressing distrust of law enforcement; and belief in law enforcement officers engaging in racial profiling; having a close relationship with people who have been stopped, arrest, or convicted.
>
> So given that, that was such a large, large part of our – conversation and, in fact, was the State's first reason it listed as being one of the reasons to strike Juror Number 45.

RP 458. The State clarified that Juror 45 did not express any personal experiences with law enforcement, but rather that they have "a bias against law enforcement at – at least a couple of times, but did not really list a basis as to why." RP 459.

The court overruled Wilson's GR 37 objection:

> THE COURT: In looking at my notes, there was some indication that this juror had a bias against law enforcement, but based on the Court's notes and my memory, there's no reason given. And it was two statements. One is, I have a negative feeling about law enforcement, and I have a bias against law enforcement. However, this witness also talked about in that same context that it was fair to understand the motivations of all witnesses, both police officers and civilian witnesses.
>
> The other issues this juror spoke about, as the State pointed out, is that he indicated several times that he could not say that he could follow the law. And in looking at the Court's notes, this juror was very close to being removed perhaps for cause because of his feelings about the drug laws and the requirement that we have that jurors follow the law.
>
> I also looked at the number of questions asked of this juror. Both sides asked this -- this juror questions fairly equally. I also looked to see if other jurors had given similar answers and were not challenged with regard to his views on drug laws. I don't find that there were remaining jurors that were not stricken that gave similar answers about that.
>
> I don't find that he indicated anything about a bad experience with police officers, although he did mention a distrust of law

enforcement. And this juror identifies as Asian, I believe. I'm going to double-check 24 that that's correct. And I don't find that the State has stricken any Asian jurors disproportionately. This is the first.

RP 460-61. The final panel included Jurors 4, 7, 9, 11, 14, 19, 28, 29, 31, 33, 34, 36, 38, 49. R 461.

The jury found Wilson guilty on both counts. RP 783. The court sentenced Wilson to 30 months. RP 796. The court also imposed community custody conditions and included a notice of ineligibility to possess firearms. RP 801. Wilson did not object to the sentence, community custody conditions, or notice of ineligibility to possess firearms. RP 802.

Wilson appeals. CP 106.

II

Wilson argues the trial court erred in overruling his GR 37 objection to the peremptory challenge to Juror 45 because the State struck the Asian juror for reasons that an objective observer could find related to race. BOA 10. The State argues that an objective viewer could not view race or ethnicity as a basis for the State's challenges or that its reasons were proxies for race or ethnicity. BOR 5. We conclude the trial court erred in overruling Wilson's GR 37 objection.

A

The Sixth Amendment of the United States Constitution and article 1, section 22 of the Washington Constitution guarantee a criminal defendant a fair trial by an impartial jury. *State v. Gaines*, 194 Wn. App. 892, 896, 380 P.3d 540 (2016); U.S. CONST. amend. VI; CONST. art. 1, sec 22. "An impartial jury is unbiased and unprejudiced." *State v. Martinez-Loyola*, __ P.3d __, 2025 WL

2693255, at *4 (2025). "Prospective jurors are guaranteed the right to no be excluded from serving on a jury due to discrimination." *State v. Hernandez*, 30 Wn. App. 2d 179, 188, 544 P.3d 542 (2024).

We review challenges to a trial court's ruling on a GR 37 objection de novo. *State v. Bell*, __ Wn.3d __, 571 P.3d 272, 277 (2025). We examine justifications for a preemptory challenge where a GR 37 objection is made "in light of the totality of the circumstances." *State v. Bell*, 571 P.3d 272, 277 (2025). The trial court's "impressions and interpretations of the challenged jurors' responses [do] not qualify as factual findings" in our analysis. *State v. Bell*, 571 P.3d 272, 277 (2025).

"The purpose of [GR 37] is to eliminate the unfair exclusion of potential jurors based on race or ethnicity." GR 37(a). "A party may object to the use of a peremptory challenge to raise the issue of improper bias." GR 37(c). "If the court determines that an objective observer could view race or ethnicity as a factor in the use of the peremptory challenge, then the peremptory challenge shall be denied." GR 37(e). Wilson does not challenge all elements of GR 37. Nevertheless, because we review de novo the totality of the circumstances supporting a GR 37 objection, we find assistance in addressing each consideration.

1

GR 37(g)(i) instructs the court to consider: "the number and types of questions posed to the prospective juror, which may include consideration of whether the party exercising the peremptory challenge failed to question the prospective juror about the alleged concern or the types of questions asked about

it." We conclude the State did not list any reasons for challenging Juror 45 about which it did not inquire from Juror 45.

Here, the State challenged Juror 45 for bias against law enforcement and for a concern that Juror 45 could not apply the drug possession with intent to distribute law to the facts. RP 457. On rehabilitation, Wilson inquired about Juror 45's ability, and due to their equivocal statements, the court later questioned Juror 45. RP 383-84. In winnowing the concern over Juror 45's ability, the Court asked, "And in making that determination, would you be able to put aside your personal feelings about drug laws and enforce the law – well, and apply the law that is given to you by the Court even if you disagree with it?" RP 384. Juror 45 did not equivocally say that they would. But they answered: "I mean, I would have the ability to do that, yes." RP 384.

The State also questioned Juror 45 about their feelings on law enforcement. RP 427. Juror 45 said "I would weigh the motivations of each person. So in that sense, I would – yeah, in that sense, I would look at it differently." RP 428. Juror 45 also said they have a "strong negative feeling of law enforcement." RP 428. Before the State's time was up, the State asked, "Would you require corroboration or extra evidence because it is a law enforcement officer testifying?" RP 430. Juror 45 did not give a concrete answer: "Not any different from any other witness. Like I said before, I don't think – I don't think witness testimony by itself is very compelling." RP 430.

11

2

GR 37(g)(ii) instructs courts to consider "whether the party exercising the peremptory challenge asked significantly more questions or different questions of the potential juror against whom the peremptory challenge was used in contrast to other jurors." We conclude the State did not ask different or more questions of Juror 45 than other jurors not challenged.

The State regularly asked other jurors their feelings about law enforcement. For example, the State similarly asked Juror 50, who identified as white, about their experiences with law enforcement. Ex. 18, RP 412. The State later followed up with Juror 50 on their feelings about law enforcement. RP 423. The State also moved to excuse Juror 50, which the court ultimately granted. RP 426. The State also inquired of Juror 18, who discussed their personal experiences with law enforcement, "You believe that you'd be able to be fair and impartial in this case?" RP 324. While the State did not ask everyone who marked strong feelings about law enforcement on their questionnaire, the State did not only ask Juror 45 about law enforcement.

The State also regularly inquired about jurors' feelings on drug possession with intent. For example, in response to the State following up on a juror's feelings about drug possession, the State inquired into the differences Juror 28 had regarding possession and intent to distribute. RP 305. The State also questioned Jurors 29, 30, and 31, about their thoughts on possession versus possession with intent to distribute. RP 415-417, 423, Ex. 18.

3

GR 37(g)(iii) instructs courts to consider "whether other prospective jurors provided similar answers but were not the subject of a peremptory challenge by that party." Wilson argues other jurors who had concerns about "hard evidence" were not challenged by the State. BOA 42. We conclude the State failed to challenge juror 28, who provided similar answers to Juror 45 on this subject.

The State did not exercise a peremptory challenge against Juror 28 who expressed a similarly equivocal answer about bias as Juror 45. When asked by the State if her strong feelings about drug possession would affect her impartiality, Juror 28 responded: "I don't think so. No." RP 336. When the State asked Juror 45 if they could set aside their feelings about drug possession, Juror 45 responded: "I would have the ability to do that, yes." RP 384. Neither statement evinces an unequivocal statement that the juror would make a fair and impartial decision without the influence of their bias.

The State argues juror 45's statements about bias were "inconsistent and equivocal at times, but they were never fully rehabilitated." BOR 28. The purpose of jury questioning is to ferret out bias. *State v. Tesfasilasye*, 200 Wn.2d 345, 359, 518 P.3d 193 (2022). The State questioned Juror 45 at the end of its second block of questioning. RP 430. While the record does not show how much time the State had left, the State chose not to rehabilitate Juror 45 or move for cause against them again before time expired: "I'll reserve, your Honor." RP 430.

The State also argues juror 45 believed "witness testimony was not 'compelling' evidence, and that police officers were a 'special case because their

objective is to arrest people.' " BOR 27. Later in the voir dire, Juror 45 clarified "I would weigh the motivations of each person. So in that sense, I would – yeah, in that sense, I would look at it differently." RP 428. Juror 45 also added "I think the fact that their job is to be a police officer comes into that. I don't think that seems different, for me, from – you know, trying to understand witness testimony from any other kind of witness." RP 429. Juror 45's answers are similar to Juror 9's, a White juror, Ex. 18,:

> [W]hether or not the person testifying is an officer, as opposed to some member of the public, I would certainly take their testimony into account, but also wish to have some type of concrete, you know, facts or evidence that had been gathered that perhaps, you know, further supported, sort of, the testimony that was being given.

RP 332. The State fails to show why it needed to challenge Juror 45 but not challenge Juror 9.

4

GR 37(g)(iv) instructs the court to consider "whether a reason might be disproportionately associated with a race or ethnicity." The State argues other jurors with similar views were excused for cause. We conclude the State's proffered reasons disproportionately are associated with race.

The State challenged Juror 45 because they held a bias against law enforcement officers. GR 37 understands that minority groups possess historic and justifiable reasons for this bias. GR 37(h)(ii) declares that this bias no longer serves as a reason for exclusion for jury service. "These justifications are not accurate indicators of a person's fitness to serve as a juror." *State v. Tesfasilasye*,

200 Wn.2d 345, 358, 518 P.3d 193 (2022) (discussing the presumptively invalid reasons included in GR 37(h)).

The State insists that the court excused for cause jurors who held similar views to those views held by Juror 45. This argument, assuming the underlying fact to be true, misses the purpose behind GR 37. "GR 37 is qualitatively different and aimed at curing a different problem. It is not an alternate way to dismiss jurors for cause." *State v. Tesfasilasye*, 200 Wn.2d 345, 359. Dismissal of other jurors for expressing a distrust in law enforcement does not alter the history of sacking jurors of color for a valid distrust of law enforcement. <u>See</u> GR 37(h).

Finally, the State argues Juror 45 did not have any personal experiences with law enforcement. BOR 26-27. At trial, Wilson argued the State challenged Juror 45 because of their personal experiences with law enforcement. RP 458. The State properly corrected Wilson, noting Juror 45 did not express any personal experiences with law enforcement. RP 459. However, GR 37(h) only lists expressing a distrust of law enforcement and does not premise that distrust on personal experiences. GR 37(h)(ii). For example, this court concluded mindfulness of the Black Lives Matter movement and media coverage on racial justice issues as reasons to challenge a juror implicated GR 37(h). *State v. Harrison*, 16 Wn. App. 2d 575, 583, 528 P.3d 849 (2023).

5

GR 37(g)(v) instructs the court to consider "whether the party has used peremptory challenges disproportionately against a given race or ethnicity, in the

15

present case or in past case." We conclude the State did not disproportionately strike Asian jurors.

The State challenged Jurors 18, 25, 36, and 45. RP 452, 454, 456. Aside from Juror 45, the challenged jurors all self-identified as White. Ex. 18. The panel the State ultimately accepted included 2 Asian jurors, 1 Middle Eastern juror, and 1 Latino juror. RP 461; Ex. 18. Thus, the State did not disproportionately challenge Asian jurors.

Despite the lack of disproportionate challenges, an objective observer who understands history discrimination against minorities in America, could view race as a factor in the State's challenging Juror 45 when considering the totality of the circumstances. The State primarily challenged Juror 45 because of their perceived bias against law enforcement and the State did not challenge white jurors who answered similarly to Juror 45.

In sum, we conclude the trial erred in overruling Wilson's GR 37 objection. Presumably, we do not want a guilty party to go free because a juror was reluctant to convict based on a distrust of law enforcement. But "the State of Washington deems imperative the excision of institutional racism prevalent in its criminal justice system," which includes disallowing peremptory challenges that are premised on such district. *State v. Hernandez*, 30 Wn. App. 2d 179, 544 P.3d 542 (2024), (Fearing, J., dissenting); GR 37(h)(2). The remedy for an improperly denied GR 37 objection is reversal and remand. *State v. Bell*, __ Wn.2d __, 571 P.3d 272, 280 (2025). Therefore, we reverse and remand for a new trial.

16

III

In light of our disposition, we do not reach Wilson's claim challenging his right to possess a firearm.

_Fearing, J._

WE CONCUR:

_Feldman, J._          _Smith, J._

17