[No. 22910-6-III. Division Three. January 26, 2006.]

THE STATE OF WASHINGTON, *Appellant,* v. BRENT W. BOLING, *Respondent.*

*Steven J. Tucker, Prosecuting Attorney*, and *Kevin M. Korsmo, Deputy*, for appellant.

*Janet G. Gemberling*, for respondent.

¶1 SWEENEY, J. — A trial judge's decision to grant a new trial is entitled to great deference by this court. Here, the judge granted a new trial in a manslaughter case. A juror confessed that he injected the results of his independent Internet research on the cause of death into the jury deliberations. The trial judge could not rule out that this unproven cause of death (unrelated to and unsupported by any evidence) influenced the finding of guilt here and granted a new trial. That was a proper exercise of discretion, and we affirm.

## FACTS

¶2 Brent W. Boling and Shaun Sager were friends. Mr. Sager became irrational and violent after an evening of drinking. Mr. Boling said he tried to calm and subdue Mr. Sager; he punched and kicked him four or five times. Mr. Sager died. The State charged Mr. Boling with first degree manslaughter.

¶3 The medical examiner testified at trial that the cause of death was a brain injury (subdural hematoma) resulting

from blunt force trauma to the head. One of the jurors was a former biology professor. This juror was not impressed with the medical examiner's testimony. He did not think there was enough brain swelling to cause Mr. Sager's death. During the trial he then searched the Internet for alternative explanations for the death. Mr. Sager's blood alcohol was .28 percent at the time of his death. The juror investigated the possibility that alcohol poisoning could have caused the death and became convinced that alcohol ingestion, not a blow to the head, killed Mr. Sager.

¶4 He nevertheless joined the other 11 jurors and voted to convict Mr. Boling of first degree manslaughter. He reasoned that Mr. Sager was under a court probation order not to drink and that Mr. Boling knew this but did nothing to prevent Mr. Sager from drinking. The juror concluded that Mr. Boling was, therefore, guilty of manslaughter for his failure to intervene in Mr. Sager's drinking. The jury found Mr. Boling guilty.

¶5 The juror misconduct came to light when another juror chatted with a prosecution investigator during the Bloomsday community race. The prosecutor alerted the court. Defense counsel also submitted an affidavit that the offending juror had told her that he did not accept the State's alleged cause of death, did Internet research, and injected extrinsic evidence about alcohol toxicity into the deliberations.

¶6 The judge arranged for a questionnaire to be mailed out to all the jurors. Mr. Boling moved for a new trial. The court concluded that the juror's conduct was misconduct: "What I have to do is take a look objectively at what the misconduct looked like and make an objective determination about whether or not it may have affected the jury." Report of Proceedings (Oct. 24, 2003) (RP) at 23. The court granted Mr. Boling's motion for a new trial: "I am satisfied after listening to this information that, in fact, it is possible objectively it had some effect on the jury. The State has not met its burden to demonstrate beyond a reasonable doubt

that the Defendant has not been prejudiced. The motion for a new trial is granted." RP at 34.

¶7 The State appeals.

## DISCUSSION

PRESUMPTION OF PREJUDICE—JUROR MISCONDUCT

¶8 The State argues that the court's decision to grant a new trial was based on an erroneous interpretation of the law because the court considered factors that inhered in the verdict. Specifically, it considered whether the misconduct in fact affected the verdict.

¶9 Alternatively, the State argues that the misconduct could not have harmed the defendant. That is because the misconduct here challenged the State's theory of the case. A finding that Mr. Boling's conduct as alleged by the State was not the cause of death would simply mean that the State had not proved its case under the law given in the instructions. The extraneous evidence was, therefore, prejudicial only to the prosecution. Mr. Boling responds that the trial court properly concluded that the extraneous evidence *could* have affected the jury's determinations. And the court properly rejected the State's argument that the extraneous evidence could only have helped the defense. We agree.

¶10 We will affirm a trial court's order granting or denying a motion for a new trial absent a manifest abuse of discretion. *State v. Balisok*, 123 Wn.2d 114, 117, 866 P.2d 631 (1994); *State v. Marks*, 71 Wn.2d 295, 302, 427 P.2d 1008 (1967).

■ ■ ¶11 Juror use of extraneous evidence is misconduct and entitles a defendant to a new trial, if the defendant has been prejudiced. *State v. Briggs*, 55 Wn. App. 44, 55, 776 P.2d 1347 (1989). The court's inquiry is an objective one. The question is whether the extrinsic evidence could have affected the jury's determinations. *State v. Caliguri*, 99 Wn.2d 501, 509, 664 P.2d 466 (1983). The court need not delve into the actual effect of the evidence. *State v.*

*Jackman*, 113 Wn.2d 772, 777-78, 783 P.2d 580 (1989). But any doubts must be resolved against the verdict. *Briggs*, 55 Wn. App. at 55. The subjective thought process of the jurors inheres in the verdict. *Gardner v. Malone*, 60 Wn.2d 836, 841, 376 P.2d 651, 379 P.2d 918 (1962).

¶12 Once juror misconduct is established, prejudice is presumed. To overcome this presumption, the State must satisfy the trial court that, viewed objectively, it is unreasonable to believe the misconduct could have affected the verdict. *Caliguri*, 99 Wn.2d at 509. And so the court properly looks at the purpose for which the extraneous evidence was injected into the deliberations. *Briggs*, 55 Wn. App. at 55-56. The court must grant a new trial unless it is satisfied beyond a reasonable doubt that the extrinsic evidence did not contribute to the verdict. *Id.* at 56; *United States v. Bagley*, 641 F.2d 1235, 1242 (9th Cir. 1981).

¶13 Here, the court was less interested in whether one or more jurors voted to convict for reasons outside the evidence and the law than in whether that possibility could be ruled out. The court did not order a new trial because a particular juror engaged in a particular thought process. Rather, the juror's posttrial statements established that the evidence of alcohol toxicity could have been misused. The jury might well have speculated that this was the cause of death but that Mr. Boling was nonetheless also responsible for this cause.

¶14 The State's theory that the juror's misconduct benefited Mr. Boling by undermining the State's theory of the cause of death is speculation. We do not know. The court's conclusion that the extrinsic evidence could have affected the jury's verdict is amply supported by this record. And that conclusion supports the court's discretionary decision to grant a new trial.

¶15 We therefore affirm the court's order.

KATO, C.J., and SCHULTHEIS, J., concur.

Review denied at 158 Wn.2d 1011 (2006).