# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 50118-0-II |
| Respondent, | |
| v. | |
| SHELLY MARGARET ARNDT, | PUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — A jury convicted Shelly Arndt of numerous crimes, including premeditated murder in the first degree and arson in the first degree. She appeals the trial court's denial of her motion for a new trial on the basis of juror misconduct and requests reversal of her murder conviction. Because the trial court did not abuse its discretion in denying the motion, we affirm.

## FACTS

### I.    TRIAL

On February 23, 2014, Arndt and her boyfriend, Darcy Veeder Jr., spent the night at their friends' home. *State v. Arndt*, No. 48525-7-II, slip op. at 2 (Wash. Ct. App. Dec. 12, 2017) (unpublished) (http://www.courts.wa.gov/opinions/). Late that night, the house caught fire. *Arndt*, No. 48525-7-II, slip op. at 2. Everyone in the home escaped except Veeder, who died. *Arndt*, No. 48525-7-II, slip op. at 2-3.

After an investigation, the State charged Arndt with murder in the first degree with an aggravating circumstance of arson in the first degree,[1] felony murder in the first degree with aggravating circumstances,[2] arson in the first degree, and six counts of assault in the second degree. *Arndt*, No. 48525-7-II, slip op. at 3.

The trial court instructed the jury that "[a] person commits the crime of murder in the first degree . . . when, with a premeditated intent to cause the death of another person, he or she causes the death of such person." Clerk's Papers (CP) at 169 (Instr. 9). It further instructed:

> Premeditated means thought over beforehand. When a person, after any deliberation, forms an intent to take human life, the killing may follow immediately after the formation of the settled purpose and it will still be premeditated. Premeditation must involve more than a moment in point of time. The law requires some time, however long or short, in which a design to kill is deliberately formed.

CP at 182 (Instr. 22). The jury found Arndt guilty as charged. The trial court sentenced Arndt to life in prison without the possibility of release or parole.

Arndt appealed her convictions.[3]

## II.    JUROR MISCONDUCT

Months after the verdict, Juror 2 approached a woman whom she did not know was the sister of Arndt's trial attorney. Juror 2 related that in Arndt's trial, she struggled with the term "premeditation." She further related that to better understand the term, she looked it up on the internet. The attorney's sister told her brother what she had learned.

---

[1] This aggravating circumstance is under RCW 10.95.020(11)(e). The State also alleged the aggravating circumstance of a particularly vulnerable victim. *See* RCW 9.94A.535(3)(b).

[2] This aggravating circumstance is under RCW 9.94A.535(3)(b).

[3] Before a mandate issued, Arndt appealed on the issue we are presented with in this appeal.

Defense investigator James Harris then met with Juror 2, explained that he worked for Arndt's trial attorney, and asked to speak with her about her experience as a juror. Juror 2 spoke with Harris and told him that during deliberations she did internet research on the word "premeditation." Juror 2 provided Harris with additional information, including sites she may have viewed. The State's investigator also interviewed Juror 2.

Arndt moved for a new trial on grounds of juror misconduct. At a hearing on the motion, the court heard testimony from Juror 2 and Harris. Juror 2 testified that she had researched the term "premeditation" and had found different sites, but did not remember whether she had viewed any of the specific sites she had showed Harris when he earlier interviewed her. She said "I believe it was from Wedipedia [verbatim], whatever that does when you Google, and that's the definition." Report of Proceedings (RP) (Feb. 6, 2017) at 21. She stated that the "key thing" that stuck out to her in the definitions she viewed was that "[o]ne of the definitions was about premeditation being short." RP (Feb. 6, 2017) at 24. She said that she looked at a couple different definitions, but it was the word "short" that made her understand. Juror 2 also testified that she had not shared her research with other jurors.

The trial court entered a written memorandum opinion with findings of fact[4] and conclusions of law. The court made explicit credibility determinations. It found that during deliberations, Juror 2 performed an internet search for the definition of "premeditation" from her home. The trial court found it could not determine the exact websites and content Juror 2 had viewed. Juror 2 consistently said that the definitions she viewed included the word "short" or the phrase "however short." CP at 136. The court found that Juror 2's sworn statements in court were

---

[4] Because neither party challenges any of the trial court's findings of fact, they are considered verities on appeal. *State v. Lohr*, 164 Wn. App. 414, 418, 263 P.3d 1287 (2011).

3

more reliable than her out-of-court statements to the two investigators which were used in an attempt to impeach her in-court testimony.  The court also found that Juror 2 had not shared her research with the other jurors.

The court concluded that Juror 2 had committed misconduct which created a presumption that Arndt was entitled to a new trial.  It determined that it must grant a new trial unless it was satisfied beyond a reasonable doubt that the extrinsic evidence Juror 2 found in her research did not contribute to the verdict.

The court ruled:

> Here, the facts show that Juror #2 conducted outside research on the definition of "premeditation," and that the definitions she viewed included the word "short" or the phrase "however short."  In substance, the Court finds that the definitions viewed by Juror #2 were indistinguishable to the jury instruction and were consistent with the law.  Because the known research results, as presented to the Court, were consistent with the jury instruction on premeditation and the law, the Court is satisfied beyond a reasonable doubt that Juror #2's research could not have affected the verdict.  Therefore, the motion for a new trial is denied.

CP at 138.  It stated "[t]o base a decision for a new trial on what is 'not known' would be inapposite to the 'strong, affirmative showing' requirement and would endanger the stability of all jury verdicts.  Therefore, this Court's decision relies on evidence that has been credibly presented, not on unknowns."  CP at 138 n.49.  Arndt appeals.

## ANALYSIS

I.    STANDARD OF REVIEW[5]

Arndt urges us to review the trial court's denial of her motion for a new trial de novo because it infringed her constitutional rights.  She acknowledges the existence of inconsistent case law on this issue, but maintains that *State v. Jones*, 168 Wn.2d 713, 230 P.3d 576 (2010), and *State*

---

[5] The dissent says it is reviewing the evidence for an abuse of discretion; however, it appears to review the evidence de novo. It also fails to consider the unchallenged findings of fact as verities.

*v. Iniguez*, 167 Wn.2d 273, 217 P.3d 768 (2009), provide the proper guidance for what standard should apply.

We have expressly stated that we "review a trial court's investigation of juror misconduct for abuse of discretion." *State v. Gaines*, 194 Wn. App. 892, 896, 380 P.3d 540, *review denied*, 186 Wn.2d 1028 (2016). We also review "a trial court's decision denying a motion for a mistrial based on juror misconduct for an abuse of discretion." *Gaines*, 194 Wn. App. at 896. "[W]hile great deference is due to the trial court's determination that no prejudice occurred, greater deference is owed to a decision to grant a new trial than a decision not to grant a new trial." *State v. Johnson*, 137 Wn. App. 862, 871, 155 P.3d 183 (2007).

*Iniguez*, 167 Wn.2d at 281, and *Jones*, 168 Wn.2d at 719, reviewed de novo the denial of the constitutional rights to a speedy trial and to present a defense, respectively. Neither case affects the standard of review that we utilize to review a trial court's decision on a mistrial motion for juror misconduct. It remains abuse of discretion.[6] *Gaines*, 194 Wn. App. at 896.

Unchallenged findings of fact are verities on appeal. *State v. Lohr*, 164 Wn. App. 414, 418, 263 P.3d 1287 (2011). "Direct and circumstantial evidence carry the same weight." *State v. Hart*, 195 Wn. App. 449, 457, 381 P.3d 142 (2016), *review denied*, 187 Wn.2d 1011 (2017). "Credibility determinations are for the trier of fact and are not subject to review." *Hart*, 195 Wn. App. at 457.

A trial court "abuses its discretion when it acts on untenable grounds or its ruling is manifestly unreasonable." *Gaines*, 194 Wn. App. at 896. A "decision is based 'on untenable

---

[6] This standard of review is consistent with the one used for dismissal of a juror. *See State v. Depaz*, 165 Wn.2d 842, 852, 204 P.3d 217 (2009). We use this standard because the trial court is able to observe the juror's demeanor and, based on that observation, interpret and evaluate the juror's answers to determine the juror's impartiality. *State v. Davis*, 175 Wn.2d 287, 312, 290 P.3d 43 (2012).

grounds' or made 'for untenable reasons' if it rests on facts unsupported in the record or was reached by applying the wrong legal standard." *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003) (quoting *State v. Rundquist*, 79 Wn. App. 786, 793, 905 P.2d 922 (1995)). A "decision is 'manifestly unreasonable' if the court, despite applying the correct legal standard to the supported facts, adopts a view 'that no reasonable person would take,' and arrives at a decision 'outside the range of acceptable choices.'" *Rohrich*, 149 Wn.2d at 654 (quoting *State v. Lewis*, 115 Wn.2d 294, 298-99, 797 P.2d 1141 (1990); *Rundquist*, 79 Wn. App. at 793).

## II.    JUROR MISCONDUCT

Based on the trial court's unchallenged finding of misconduct, both parties proceed from the premise that Juror 2 committed misconduct. They disagree on whether the trial court abused its discretion by concluding the misconduct did not affect the verdict beyond a reasonable doubt.

Arndt contends that Juror 2's internet research could have affected the verdict of guilty. She argues that the juror misconduct gives rise to a presumption of prejudice that the State can only overcome by a showing beyond a reasonable doubt that the misconduct could not have affected the verdict. She contends that the State failed to meet this burden. Because the trial court made unchallenged findings of fact that support its legal conclusions, we conclude the trial court did not abuse its discretion in ruling the misconduct did not contribute to the verdict beyond a reasonable doubt.

"A strong, affirmative showing of misconduct is necessary in order to overcome the policy favoring stable and certain verdicts and the secret, frank and free discussion of the evidence by the jury." *State v. Balisok*, 123 Wn.2d 114, 117-18, 866 P.2d 631 (1994). "[T]he consideration of novel or extrinsic evidence by a jury is misconduct and can be grounds for a new trial." *Balisok*, 123 Wn.2d at 118.

"Juror use of extraneous evidence is misconduct and entitles a defendant to a new trial, if the defendant has been prejudiced." *State v. Boling*, 131 Wn. App. 329, 332, 127 P.3d 740 (2006). The court need not delve into the actual effect of the evidence, "[b]ut any doubts must be resolved against the verdict." *Boling*, 131 Wn. App. at 332-33. "The subjective thought process of the jurors inheres in the verdict." *Boling*, 131 Wn. App. at 333.

"Once juror misconduct is established, prejudice is presumed." *Boling*, 131 Wn. App. at 333. The court must grant a new trial unless it is satisfied beyond a reasonable doubt that the extrinsic evidence did not contribute to the verdict. *Boling*, 131 Wn. App. at 333. We do not disturb the court's ruling denying the motion for a new trial based on juror misconduct unless the court abused its discretion. *Gaines*, 194 Wn. App. at 896

Washington law defines "premeditation" as "'the deliberate formation of and reflection upon the intent to take a human life' and [it] involves 'the mental process of . . . deliberation, reflection, weighing or reasoning for a period of time, however short.'" *State v. Condon*, 182 Wn.2d 307, 315, 343 P.3d 357 (2015) (quoting *State v. Pirtle*, 127 Wn.2d 628, 644, 904 P.2d 245 (1995)). "Premeditation must involve 'more than a moment in point of time.'" *Condon*, 182 Wn.2d at 315 (quoting RCW 9A.32.020(1)). The trial court's instructions to the jury in this case stated:

> Premeditated means thought over beforehand. When a person, after any deliberation, forms an intent to take human life, the killing may follow immediately after the formation of the settled purpose and it will still be premeditated. Premeditation must involve more than a moment in point of time. The law requires some time, however long or short, in which a design to kill is deliberately formed.

CP at 182 (Instr. 22).

In *State v. Fry*, a juror looked up the word "substantial" in a dictionary at home and brought the dictionary to deliberations. 153 Wn. App. 235, 238, 220 P.3d 1245 (2009). The juror did not

share the definition or the dictionary with other jurors until after the jury had delivered its verdict to the bailiff. *Fry*, 153 Wn. App. at 238. She said that the definition "'had a little bit to do' with her verdict, 'but it wasn't the majority of it by any means.'" *Fry*, 153 Wn. App. at 238. The trial court found that the juror "was not enlightened by the definition" and that the instruction for third degree assault, the crime charged, "contained the word 'substantial.'" *Fry*, 153 Wn. App. at 238. It ruled that the juror's conduct did not influence the verdict. *Fry*, 153 Wn. App. at 238.

Reviewing for abuse of discretion, the appellate court concluded that there was no showing of prejudice. *Fry*, 153 Wn. App. at 238, 240. The trial court "concluded, based on adequate findings of fact, that neither the dictionary nor the juror's use of the dictionary influenced the verdict" and the defendant "ma[de] no showing that the language in the dictionary, even if someone did look at it, adversely influenced the resolution of the case."[7] *Fry*, 153 Wn. App. at 240.

In this case, the trial court found that "the exact websites and content that Juror #2 viewed is unclear" and that her research "resulted in her viewing definitions of 'premeditation' that included the word 'short' or the phrase 'however short.'" CP at 136-37. Based on these findings, it concluded that, in substance:

> [T]he definitions viewed by Juror #2 were indistinguishable to the jury instruction and were consistent with the law. Because the known research results, as presented to the Court, were consistent with the jury instruction on premeditation and the law, the Court is satisfied beyond a reasonable doubt that Juror #2's research could not have affected the verdict.

CP at 138. It reasoned that "[t]o base a decision for a new trial on what is 'not known' would be inapposite to the 'strong, affirmative showing' requirement and would endanger the stability of all

---

[7] Arndt urges us to consider the federal case *United States v. Lawson*, 677 F.3d 629 (4th Cir. 2012). In *Lawson* a juror conducted online research and the court was unable to definitively determine the content of the definitions the juror viewed, like this case. 677 F.3d at 639-40. *Lawson* is not persuasive and we instead rely upon Washington law.

jury verdicts. Therefore, this Court's decision relies on evidence that has been credibly presented, not on unknowns."[8] CP at 138 n.49.

Like *Fry*, the juror in this case researched the meaning of a critical word in a jury instruction and the trial court ruled that the juror's conduct did not influence the verdict. Unlike *Fry*, however, the trial court was unable to identify what specific definitions Juror 2 found in her research so as to evaluate their prejudicial effect.

The trial court here applied the correct legal standard. It found juror misconduct. It presumed prejudice that the State could overcome by satisfying the court beyond a reasonable doubt that the extrinsic evidence did not contribute to the verdict. It determined that it must "make a finding of not only whether misconduct occurred, but also the nature and extent of the misconduct." CP at 138.

Although the exact websites Juror 2 visited and the precise definitions she viewed are unknown, the part of those definitions that had an impression on her and affected her verdict were the word "short" and phrase "however short." As the trial court ruled, these definitions "were indistinguishable to the jury instruction and were consistent with the law." CP at 138. This ruling is sufficient to satisfy beyond a reasonable doubt that the extrinsic evidence did not contribute to the verdict and to overcome the presumption of prejudice. The court did not abuse its discretion.

---

[8] The dissent fails to acknowledge this reasoning by the trial court. Instead it says that because the exact nature of Juror 2's research is unknown, the State could never establish beyond a reasonable doubt that her research could not have affected the verdict. This interpretation improperly ignores the role of the trial court as fact finder and the equal weight direct and circumstantial evidence are afforded. It also exceeds what is necessary to decide this case.

The trial court did not abuse its discretion by concluding that Juror 2's research did not contribute to the verdict. Accordingly, we affirm Arndt's conviction.

Melnick, J.

I concur:

Johanson, J.

MAXA, C.J. (dissenting) – The trial court's denial of Shelly Arndt's motion for a new trial and the majority's opinion affirming that denial are inconsistent with the applicable facts and with the law. Accordingly, I dissent.

A.    APPLICABLE FACTS

There is no dispute that during deliberations, juror 2 performed an internet search for the definition of "premeditation" and reviewed *multiple* definitions. The trial court made an unchallenged finding that this outside research was misconduct. And the trial court expressly recognized that the misconduct created a presumption that Arndt was entitled to a new trial and that the State had the burden of overcoming that presumption.

There also is no dispute that nobody, including juror 2 herself, knows the exact websites and definitions of premeditation that juror 2 viewed in the course of her internet search. All that juror 2 remembered was that *one* of the definitions included the word "short" or "however short." Clerk's Papers (CP) at 136. Despite not knowing the language of the multiple definitions juror 2 viewed, the trial court found that these unknown definitions were indistinguishable from the court's instruction on premeditation and therefore concluded beyond a reasonable doubt that juror 2's research could not have affected the verdict.

B.    PRESUMPTION OF PREJUDICE

A juror's consideration of evidence not presented at trial constitutes misconduct and can require a new trial. *State v. Gaines*, 194 Wn. App. 892, 897, 380 P.3d 540 (2016). Juror misconduct in considering extrinsic evidence entitles a defendant to a new trial if the misconduct prejudiced the defendant. *State v. Boling*, 131 Wn. App. 329, 332, 127 P.3d 740 (2006). The prejudice inquiry is objective – whether the extrinsic evidence *could have* affected the jury's determination. *Gaines*, 194 Wn. App. at 898.

11

Significantly, prejudice is presumed once juror misconduct is established. *Id*. at 897; *see also State v. Depaz*, 165 Wn.2d 842, 856, 204 P.3d 217 (2009). The burden then shifts to the State to overcome the presumption. *See Boling*, 131 Wn. App. at 333.

> To overcome this presumption, the State must satisfy the trial court that, viewed objectively, it is unreasonable to believe that misconduct could have affected the verdict. . . . The court must grant a new trial unless it is satisfied beyond a reasonable doubt that the extrinsic evidence did not contribute to the verdict.

*Id*.

"Any doubt that the misconduct affected the verdict must be resolved against the verdict." *State v. Johnson*, 137 Wn. App. 862, 869, 155 P.3d 183 (2007). Similarly, the Supreme Court stated in a civil case that "[i]f the trial court has any doubt about whether the misconduct affected the verdict, it is obligated to grant a new trial." *Adkins v. Alum. Co. of Am.*, 110 Wn.2d 128, 137, 750 P.2d 1257, 756 P.2d 142 (1988).

C.     PREJUDICE ANALYSIS

I agree with the majority that the trial court's denial of Arndt's motion for a new trial is reviewed for an abuse of discretion. But I believe that the trial court abused its discretion here because the evidence did not support the court's crucial factual finding.

The key, undisputed fact is that juror 2 did not know what definitions of "premeditation" she reviewed. In its memorandum opinion, the trial court specifically stated that "[b]ased on the provided testimony and declarations, the exact websites and content that Juror #2 viewed is unclear." CP at 136.

The trial court found that "Juror #2's research resulted in her reviewing definitions of 'premeditation' that *included* the word 'short' or the phrase 'however short.' " CP at 136-37 (emphasis added). But there was no evidence regarding what else the multiple definitions juror 2 viewed stated about premeditation.

This uncertainty regarding what juror 2 learned from her internet research necessarily precludes the State from establishing beyond a reasonable doubt that her research could not have affected the verdict. Without knowing the language of the multiple definitions of premeditation juror 2 viewed, it is impossible to know whether those definitions affected the verdict.

Inexplicably, the trial court ignored the lack of evidence regarding the definitions juror 2 viewed during her internet research. Instead, the court made the following finding: "In substance, the Court finds that the definitions viewed by Juror 2 were indistinguishable to the jury instruction and were consistent with the law." CP at 138. This crucial finding is completely unsupported by the evidence. If the trial court did not know what definitions juror 2 viewed, how could the court find that the multiple definitions juror 2 viewed were indistinguishable from the jury instruction and consistent with the law? Because nobody knows what the definitions stated, it is possible that they were *not* indistinguishable from the jury instruction and *not* consistent with the law.

The trial court concluded, "Because the *known research results*, as presented to the Court, were consistent with the jury instruction on premeditation and the law, the Court is satisfied beyond a reasonable doubt that Juror #2's research could not have affected the verdict." CP at 138 (emphasis added). However, this conclusion ignores the *unknown* research results. The fact that the one phrase juror 2 remembered may not be inconsistent with the jury instruction cannot somehow support the conclusion that the unknown research results also were not inconsistent with the jury instruction.

The majority emphasizes the trial court's explanation for ignoring the fact that nobody knows what juror 2 viewed: "To base a decision for a new trial on what is 'not known' would be inapposite to the 'strong, affirmative showing' requirement and would endanger the stability of

13

all jury verdicts. Therefore, this court's decision relies on evidence that has been credibly presented, not on unknowns." CP at 138 n.49. But the trial court failed to recognize that the State had the burden of overcoming the presumption of prejudice. *Boling*, 131 Wn. App. at 333. What was not known prevented the State from meeting that burden.

Further, the trial court mixed its concepts. The "strong, affirmative showing" requirement applies to whether *misconduct has occurred*, not whether that misconduct caused prejudice. *State v. Balisok*, 123 Wn.2d 114, 117-18, 866 P.2d 631 (1994). The trial court made an unchallenged finding that misconduct had occurred, satisfying the strong, affirmative showing requirement.

Finally, the majority relies on *State v. Fry*, 153 Wn. App. 235, 220 P.3d 1245 (2009). But that case is easily distinguishable. In *Fry*, a juror looked up the word "substantial" in a dictionary that she brought to the deliberations. *Id*. at 238. The appellate court affirmed the trial court's denial of a new trial motion because there was no showing of prejudice. *Id*. at 240. However, in that case the trial court knew exactly what definition the juror viewed. Here, the trial court acknowledged that what definitions of premeditation juror 2 reviewed was unclear and unknown.

When the evidence is insufficient to determine what extrinsic evidence a juror considered when engaging in misconduct, allocation of the burden of proof necessarily resolves the issue. Because the State has the burden of proving that no prejudice occurred, the absence of evidence should be fatal to its position. By ruling that the absence of evidence precluded a finding of prejudice, the trial court essentially shifted the burden of proof to Arndt.

14

D.    CONCLUSION

The State could not satisfy its burden of disproving prejudice without more specific evidence regarding juror 2's internet search.  As a result, the trial court clearly abused its discretion in denying Arndt's motion for a new trial.  I would reverse and remand for a new trial untainted by juror misconduct.

_Maxa, C.J._
_____
MAXA, C.J.