# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 48210-0-II |
| Respondent. | |
| vs. | UNPUBLISHED OPINION |
| GARY LEE BROWN, JR.,<br>aka GARY L. TAYLOR, | |
| Appellant. | |

MAXA, P.J. – Gary Brown appeals his convictions of first degree trafficking in stolen property and possession of a controlled substance and legal financial obligations (LFO) provisions. We hold that (1) the trial court did not err in denying Brown's motion for mistrial after a juror was observed sleeping during the testimony of a key prosecution witness; (2) as the State concedes, the DNA collection fee and the interest accrual provision regarding nonrestitution LFOs for interest accruing after June 7, 2018 must be stricken from the judgment and sentence; and (3) Brown's claims asserted in a statement of additional grounds (SAG) have no merit.

Accordingly, we affirm Brown's convictions, but remand for the trial court to strike the DNA collection fee and the interest accrual provision for nonrestitution LFOs for interest accruing after June 7, 2018 from Brown's judgment and sentence.

FACTS

*Background*

In December 2013, officers from the Grays Harbor County Sheriff's Department searched Brown's truck pursuant to a warrant. The search warrant was based on a tip that Brown had stolen three alder logs from private property. The search of Brown's truck revealed a hypodermic needle that field tested positive for methamphetamine. Deputy Sean Gow, who helped execute the search warrant, also found pieces of wood and tree bark which he identified as western red alder in addition to certain tools, including disassembled chain saw parts. Brown allegedly admitted that he had helped another person take two or three alder logs and that he had sold them.

The State charged Brown with first degree trafficking in stolen property and possession of a controlled substance.

Brown's trial took place in August 2014 and lasted three days. Before impaneling the jury, the trial court asked both parties whether they would need an alternate juror. Neither party requested an alternate juror, and the court did not appoint one.

On the second day of trial, the jury heard testimony from Deputy Gow. Gow's testimony was interrupted by a lunch recess. After the jury returned from lunch, the State introduced several exhibits and presented additional testimony from Gow. After about 35 minutes, the trial court ordered a brief recess. When the court excused the jury, juror 1 remained in her seat and appeared to be sleeping.

The court, prosecutor, defense counsel, defendant, and Gow discussed how long juror 1 had been sleeping.

[DEFENSE COUNSEL]: I think the question is, how long was that juror asleep?

THE COURT:  You know.  She is the furthest one from me.  I didn't know it until I saw that we didn't have everybody leaving.

[PROSECUTOR]:  Until the jurors walked out, I didn't notice it, either, Your Honor, I can't really look at them.

[DEFENSE COUNSEL]:  Somebody pointed it out to me about a minute before we sent them out.

[BROWN]:  She has been sleeping for quite a while.

[PROSECUTOR]:  For the record, that's juror number one asleep at the break.  I don't know if Deputy Gow saw.

MR. GOW:  Not until the last one, she was out.

2 Report of Proceedings (RP) at 119.

Defense counsel moved for a mistrial because juror 1 had gone to sleep and missed the testimony.  The following exchange occurred:

THE COURT:  Well, from what I – I don't know that anybody had any great timing on it, but, I heard anywhere from a minute to whatever, I will note that it was during the State's presentation.  I think they would be more concerned about it than anything, but I don't know that that's a basis for a mistral, just a minute or so of a [juror] dozing off, I am glad we had the break.

[DEFENSE COUNSEL]:  Well, Your Honor, Mr. Brown's mother who has been watching the trial, told me that she has been asleep for some time.

THE COURT:  That doesn't give me much of an estimate.  I still haven't heard of any definite time.

[PROSECUTOR]:  I certainly don't know.

2 RP at 124-25.  The trial then continued.  Brown did not ask the trial court to remove the juror.

At the end of the trial, the trial court gave instructions to the jury.  Brown did not object to any of the instructions.  The jury found Brown guilty of both charges.

After the jury delivered its verdict, the trial court allowed Brown to present an offer of proof regarding juror 1's sleeping.  Brown's mother testified that juror 1 had been sleeping "a

little over 20 minutes" and that she had been watching the time. 1 RP at 33. The State then called juror 1 to testify. Juror 1 testified that to her knowledge, she was not asleep. She stated that she merely had her eyes closed because the air conditioning was drying out her eyes and her eyes were sensitive to the overhead lights. Juror 1 also stated that when the jury got up to leave she heard someone telling her to wake up, but she was not asleep.

At sentencing, the trial court imposed LFOs, including a $100 DNA collection fee. The judgment and sentence also included an interest accrual provision for nonrestitution LFOs.

Brown appeals his convictions and the imposition of the DNA collection fee and the interest accrual provision for nonrestitution LFOs in his judgment and sentence.

ANALYSIS

A.   DENIAL OF MOTION FOR MISTRIAL FOR SLEEPING JUROR

Brown argues that the trial court erred when it failed to excuse juror 1 and denied his motion for mistrial after juror 1 was observed sleeping during the testimony of a key witness. We disagree.

1.   Legal Principles

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee a criminal defendant the right to a fair trial by an impartial jury. *State v. Gaines*, 194 Wn. App. 892, 896, 380 P.3d 540 (2016). "A sleeping juror may prejudice the defendant's due process rights and right to an impartial jury." *In re Pers. Restraint of Caldellis*, 187 Wn.2d 127, 146, 385 P.3d 135 (2016).

To reverse a conviction because of a sleeping juror, we must find prejudice to the defendant. *See id.*; *State v. Hughes*, 106 Wn.2d 176, 204, 721 P.2d 902 (1986). At a minimum, the defendant generally must show "how long the jurors slept or what specific testimony they

missed by sleeping." *Caldellis*, 187 Wn.2d at 146. We review for an abuse of discretion whether a sleeping juror prejudiced the defendant. *Hughes*, 106 Wn.2d at 204.

Apart from constitutional principles, RCW 2.36.110 states that the judge has a duty "to excuse from further jury service any juror, who in the opinion of the judge, has manifested unfitness as a juror by reason of . . . inattention . . . or by reason of conduct or practices incompatible with proper and efficient jury service." CrR 6.5 states that "[i]f at any time before submission of the case to the jury a juror is found unable to perform the duties[,] the court shall order the juror discharged" and replace that juror with an alternate.

The trial court has "a mandatory duty to dismiss an unfit juror" under RCW 2.36.110. *State v. Lawler*, 194 Wn. App. 275, 284, 374 P.3d 278 (2016). And RCW 2.36.110 and CrR 6.5 place a continuous obligation on the trial court to excuse any juror who is unfit and unable to perform the duties of a juror. *State v. Jorden*, 103 Wn. App. 221, 227, 11 P.3d 866 (2000). We review for an abuse of discretion a trial court's decision whether to excuse a juror. *Id.* at 226.

Here, Brown moved for a mistrial. " 'A mistrial should be granted only when the defendant has been so prejudiced that nothing short of a new trial can insure that defendant will be tried fairly.' " *Gaines*, 194 Wn. App. at 897 (quoting *State v. Gilcrist*, 91 Wn.2d 603, 612, 590 P.2d 809 (1979)). Prejudice occurs when a trial irregularity affects the outcome of the trial. *Gaines*, 194 Wn. App. at 897.

We review for an abuse of discretion a trial court's denial of a motion for mistrial based on juror misconduct. *Id.* at 896. A trial court abuses its discretion when its ruling is manifestly unreasonable or based on untenable grounds. *Id.* However, trial courts generally have " 'wide discretionary powers in . . . dealing with irregularities which arise.' " *Id.* at 896-97 (quoting *Gilcrist*, 91 Wn.2d at 612).

2.    Length of Time that Juror 1 Slept

Brown argues that substantial evidence does not support the trial court's oral finding that juror 1 had been sleeping for about a minute.  Instead, Brown contends that the record shows that juror 1 had been sleeping for 20 minutes.  We disagree.

We review whether the trial court's findings of fact are supported by substantial evidence.  *State v. Delbosque*, 195 Wn.2d 106, 116, 456 P.3d 806 (2020).  Evidence is substantial if it is enough to persuade a fair-minded person of the truth of the stated premise.  *Id*.  We do not weigh conflicting evidence or witness credibility.  *State v. Boyer*, 200 Wn. App. 7, 13, 401 P.3d 396 (2017).

The trial court did not make an express finding of fact regarding the length of time that Juror 1 was asleep.  However, in response to Brown's mistrial motion the court stated, "I don't know that anybody had any great timing on it, but, I heard *anywhere from a minute to whatever*. . . .  I don't know that that's a basis for a mistrial, *just a minute or so* of a [juror] dozing off."  2 RP at 124-25 (emphasis added).

Here, the trial court heard conflicting information as to how long juror 1 had been asleep. On one hand, the trial court, the prosecutor, and Deputy Gow all stated that they did not notice that juror 1 had fallen asleep until the jury had been excused.  Defense counsel stated, "Somebody pointed it out to me about a minute before we sent them out."  2 RP at 119.  On the other hand, Brown stated that juror 1 "had been sleeping for quite a while."  2 RP at 119. Defense counsel stated that Brown's mother told him that juror 1 was asleep for "some time."  2 RP at 125.

In the post-trial offer of proof, Brown's mother testified that juror 1 had been sleeping "a little over 20 minutes."  1 RP at 33.  Conversely, as part of the offer of proof juror 1 testified that

6

she had not fallen asleep to her knowledge and had closed her eyes only because of eye dryness and light sensitivity.

The weighing of evidence, including any inconsistencies and matters of credibility, is for the trial court. Because the trial court made its finding of fact upon conflicting evidence, we reject Brown's argument that substantial evidence did not support the trial court's finding that juror 1 was asleep for a minute or so.

3. Denial of Mistrial Motion/Failure to Excuse

Brown argues that the trial court erred by denying his motion for a mistrial and failing to excuse juror 1 from the jury panel. We disagree.

Here, the trial court determined that juror 1 was asleep for about a minute. The court knew what testimony from Deputy Dow juror 1 had slept through during that minute. In his motion, Brown did not show or even argue that he had been prejudiced by juror 1 missing a brief portion of Dow's testimony. Under the abuse of discretion standard, we conclude that the trial court did not err by denying Brown's motion for a mistrial in refusing to excuse juror 1.

Brown's arguments do not compel a different result. First, as discussed above, Brown argues that juror 1 was asleep for longer than a minute and that a juror sleeping for a significant period of time requires a mistrial. But we conclude above that substantial evidence supported the trial court's finding that juror 1 was asleep for a minute or so. The court ruled that a juror dozing off for a minute or so was not the basis for a mistrial, and Brown does not argue otherwise.

Second, Brown argues that the trial court erred in concluding that there was no prejudice because juror 1 slept through *the State's* witness. He argues that the correct analysis is whether the juror was asleep during relevant testimony, regardless of who presented it. However, the trial court merely suggested that the State should be more concerned than Brown about the juror

missing its presentation of evidence. The court did not rule that Brown was not prejudiced because the State presented the testimony that juror 1 slept through.

Third, Brown argues that sleeping during trial constitutes juror misconduct for which prejudice is presumed, citing *Jorden*, 103 Wn. App. at 226, 230 and *State v. Boling*, 131 Wn. App. 329, 333, 127 P.3d 740 (2006). However, *Jorden* does not state that prejudice is presumed for a sleeping juror. 103 Wn. App. at 226-230. And *Boling* stated that prejudice was presumed for juror misconduct involving the use of extraneous evidence during jury deliberations. *Boling*, 131 Wn. App. at 332-33. No case has held that prejudice is presumed when a juror falls asleep for a brief period. Both *Caldellis* and *Hughes* indicate that a claim based on a sleeping juror requires a showing of prejudice and neither case refers to a presumption. *Caldellis*, 187 Wn.2d at 146; *Hughes*, 106 Wn.2d at 204.

Fourth, Brown emphasizes that Deputy Gow's testimony was very relevant to several case issues. But he fails to identify what testimony juror 1 actually missed given the trial court's finding that she was only asleep for about a minute. And he fails to point to "specific evidence of prejudice" that resulted from juror 1 sleeping for a brief period. *Caldellis*, 187 Wn.2d at 146.

Fifth, Brown implies that the trial court should have excused juror 1 sua sponte under RCW 2.36.110 and CrR 6.5, again relying on *Jorden*. However, RCW 2.36.110 and CrR 6.5 require excusal only if the trial court finds that the juror has shown unfitness to be a juror. In *Jorden*, we affirmed the trial court's removal of a juror under RCW 2.36.110 because the trial court "found her fitness as a juror compromised." 103 Wn. App. at 230. The trial court made no such finding here.[1]

---

[1] Brown also cites to *United States v. Barrett*, 703 F.2d 1076 (9th Cir. 1983), which this court discussed in *Jorden*, 103 Wn. App. at 227-28. But *Barrett* involved a trial court's failure to even

Finally, Brown claims that the trial court's denial of his mistrial motion was based on concerns of judicial economy because the trial court had not selected an alternate juror who could replace juror 1. But there is no indication in the record that the absence of an alternate played any role in the trial court's decision.

The standard of review for both a ruling on a motion for mistrial and excusal of a juror is an abuse of discretion. We hold that the trial court did not abuse its discretion in denying Brown's motion for a mistrial and failing to excuse juror 1 from the jury.

B.      DNA COLLECTION FEE AND INTEREST ACCRUAL PROVISION

Brown argues, and the State concedes, that the DNA collection fee and interest accrual provision regarding nonrestitution LFOs in his judgment and sentence must be stricken. We agree.

In 2018, the legislature amended (1) RCW 43.43.7541, which establishes that the DNA collection fee no longer is mandatory if the offender's DNA previously had been collected because of a prior conviction; and (2) RCW 10.82.090, which now states that no interest will accrue on nonrestitution LFOs after June 7, 2018, and that the trial court shall waive nonrestitution interest that had accrued before June 7, 2018 upon the motion of the defendant following release from total confinement. RCW 10.82.090(1), (2)(a). These amendments apply prospectively to cases pending on direct appeal. *State v. Ramirez*, 191 Wn.2d 732, 747, 426 P.3d 714 (2018).

Here, the State does not object to striking the DNA collection fee, apparently because their records show that Brown's DNA previously was collected because of a prior conviction.

---

investigate a juror's admission that he had been sleeping during the trial. 703 F.2d at 1082-83. That case is inapplicable here.

Therefore, under the current version of RCW 43.43.7541, the DNA collection fee imposed on Brown must be stricken. In addition, the interest accrual provision regarding nonrestitution LFOs for interest accruing after June 7, 2018 must be stricken under existing law.

C.      SAG CLAIMS

In his SAG, Brown raises five assertions of error. We conclude that none of Brown's SAG claims have merit.

1.      Defense Counsel's Delay in Filing Order of Indigency

Brown asserts that he received ineffective assistance of counsel due to defense counsel's failure to file evidence of Brown's indigent status with his notice of appeal. Brown contends that this failure caused a prejudicial delay of his appeal. We disagree.

To demonstrate ineffective assistance of counsel, a defendant must show that defense counsel's representation was deficient – fell below an objective standard of reasonableness – and that the deficient performance prejudiced the defendant. *State v. Estes*, 188 Wn.2d 450, 457-58, 395 P.3d 1045 (2017). Prejudice exists if there is a reasonable probability that the outcome would have been different, not just that there could have been some "conceivable effect" on the proceedings. *Id*. at 458.

In October 2015, Brown's defense counsel filed a notice of appeal. In November, this court sent defense counsel a letter stating that the appeal would be dismissed unless Brown either paid the required filing fee or filed an order of indigency within 10 days. In December, this court entered a conditional order of dismissal giving Brown 10 more days to pay the filing fee or file an order of indigency. Defense counsel apparently did not respond to either. Consequently, in January 2016 this court dismissed Brown's appeal. The court subsequently issued a mandate terminating review.

In November 2017, Brown filed a pro se motion to recall the mandate based on defense counsel's failure to provide an order of indigency. In December, a commissioner of this court granted Brown's motion, recalled the mandate disposing of Brown's appeal, and ordered Brown to obtain an order of indigency from the trial court. Brown filed a motion for an order of indigency, which the trial court issued in June 2018. This court then issued a public letter of perfection.

Brown's appeal was delayed for over two and a half years because he failed to pay a filing fee or file an order of indigency, resulting in a dismissal of the appeal. Brown alleges that his defense counsel failed to establish his indigent status.

Even assuming that defense counsel's failure to obtain and file an order of indigency was deficient, Brown does not explain how the delay caused by this failure prejudiced his appeal in any way. And there is no indication in the record that the delay caused any such prejudice. Therefore, we reject Brown's assertion.

2. Erroneous Jury Instructions

Brown asserts that the trial court erred in giving jury instructions 3, 10, 13, and 14. He claims that the wording of these instructions relieved the State's burden to prove every element beyond a reasonable doubt. We disagree.

"Jury instructions are sufficient if, viewed as a whole, they allow the defendant to argue his or her theory of the case and accurately inform the jury of the applicable law." *State v. Wilson*, 10 Wn. App. 2d 719, 727, 450 P.3d 187 (2019). In addition, when requested "[t]rial courts must define technical words and expressions used in jury instructions, but need not define words and expressions that are of ordinary understanding or self-explanatory." *State v. Brown*,

132 Wn.2d 529, 611-12, 940 P.2d 546 (1997). A term is "technical" when it has a meaning that differs from common usage. *Id.* at 611.

A defendant who does not object to an instruction in the trial court generally cannot challenge that instruction for the first time on appeal. *See State v. Johnson*, 188 Wn.2d 742, 761, 399 P.3d 507 (2017). The exception is when an instruction error is of constitutional magnitude. RAP 2.5(a)(3); *State v. Ackerman*, 11 Wn. App. 2d 304, 309, 453 P.3d 749 (2019). The failure to provide a definition is not an issue of constitutional magnitude. *State v. O'Donnell*, 142 Wn. App. 314, 325, 174 P.3d 1205 (2007).

First, Brown asserts that the trial court erred by giving jury instruction 3 – the definition of "trafficking in stolen property" – because it omitted the definition of "stolen" under WPIC 79.08, the definition of "theft" under WPIC 79.01, and the definition of "knowledge" under WPIC 10.02.[2]

Second, Brown asserts that the trial court erred by giving jury instruction 10 – the definition of "stolen" – because it is missing some instructions, including WPIC 79.01 (the definition of "theft") and 10.01 (the definition of "intentionally").

Third, Brown asserts that the trial court erred in giving jury instruction 13 – the definition of possession and constructive possession – because it omitted the middle paragraph from WPIC 50.03. That paragraph states, "Proximity alone without proof of dominion and control is insufficient to establish constructive possession. Dominion and control need not be exclusive to support a finding of constructive possession." WPIC 50.03, at 1121.

---

[2] 11 & 11A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL (4th ed. 2016) (WPIC).

Fourth, Brown asserts that instruction 14 – the definition of accomplice liability provided by WPIC 10.51 – is erroneous because it included the first bracketed paragraph of WPIC 10.51[3] and does not include WPIC 10.02 – the definition of knowledge.

None of Brown's claimed errors raise constitutional issues. He primarily challenges the trial court's failure to define certain terms, which does not implicate the constitution. *O'Donnell*, 142 Wn. App. at 325. Therefore, he cannot assert these challenges for the first time on appeal and we decline to address them.

Brown also states without discussion that instruction 10 (defining stolen) and instruction 13 (defining possession and constructive possession) relieve the State of its burden of proof. But this assertion is too vague for us to consider. RAP 10.10(c).

3. Evidence at Trial

Brown asserts that the evidence used against him at trial was "obtained lawlessly" in violation of RCW 10.79.040, which precludes police officers from entering and searching a private dwelling house or place of residence without a warrant. SAG at 3. He claims that "[t]he record shows . . . that no search warrant had been filed or sought after" in this case. SAG at 3.

But the record shows that the State obtained a warrant to search Brown's truck. Brown moved to suppress the evidence seized from the search, but the trial court denied his motion to suppress. In addition, RCW 10.79.040 is inapplicable because there was no indication that Brown's truck was a private dwelling house or place of residence. Therefore, we reject Brown's assertion.

---

[3] This paragraph states, "A person is guilty of a crime if it is committed by the conduct of another person for which he or she is legally accountable. A person is legally accountable for the conduct of another person when he or she is an accomplice of such other person in the commission of the crime." WPIC 10.51, at 234.

    4.    Right to a Fair Trial

Brown asserts that the trial judge violated his fundamental right to a fair trial by (1) "allow[ing] the case to go forward without a search warrant" and (2) "when he read the flawed Jury instructions to the Jury with so many obvious errors." SAG at 4.

Brown's first assertion is too vague to properly inform us of the error. RAP 10.10(c) requires an appellant to inform this court of the "nature and occurrence of alleged errors." A review of the record shows that the Grays Harbor County Sheriff's Department obtained a warrant to search Brown's truck. Brown moved to suppress the evidence seized from the search, but the trial court denied his motion. It is unclear what Brown is attempting to argue regarding the search warrant.

We reject Brown's second assertion that the jury instructions were erroneous. As discussed above, Brown's arguments regarding the jury instructions have no merit.

    5.    Access to Law Books and Cooperation of Appellate Counsel

Brown contends that the jail limited his access to WPIC jury instructions and other books. He also claims that appellate counsel refused to review certain issues with him before filing the opening brief and refused to allow him to review motions and briefs before they were filed. Brown claims that he had to "rely on friends and other inmates for the information on the Jury instructions that [Brown] was able to look at." SAG at 5.

However, both assertions involve evidence not in the record. Such assertions are not properly raised in a statement of additional grounds. *State v. Calvin*, 176 Wn. App. 1, 26, 316 P.3d 496 (2013). Therefore, we reject Brown's claim.

## CONCLUSION

We affirm Brown's convictions, but we remand for the trial court to strike the DNA collection fee and the interest accrual provision regarding nonrestitution LFOs for interest accruing after June 7, 2018 from Brown's judgment and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, P.J.

We concur:

GLASGOW, J.

CRUSER, J.