IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 40176-6-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BRIAN WILCOX, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

COONEY, J. — Brian Wilcox was convicted of second degree murder and first degree arson for shooting and killing his wife before setting their house ablaze. After the court entered the jury's verdict, it came to light that a juror had conducted research into the type of ammunition used in the murder. Mr. Wilcox brought a motion to set aside the verdict due to juror misconduct. After a hearing on Mr. Wilcox's motion, the court found there had been juror misconduct but denied the motion because it did not find any reasonable probability the misconduct affected the verdict.

Mr. Wilcox appeals, arguing the court applied the incorrect legal standard in deciding the motion. He also argues the court did not hold an adequate hearing on the motion. We agree that the trial court applied the incorrect legal standard, reverse the order denying Mr. Wilcox's motion, and remand for a new hearing. We need not address Mr. Wilcox's assignment of error as to the adequacy of the hearing because we remand for a new hearing.

## BACKGROUND

Mr. Wilcox and his wife, Kathy Wilcox, were married just shy of 50 years and had several children together. According to Mr. Wilcox, the couple rarely quarreled. Mr. Wilcox developed an interest in firearms in 2019 and began accumulating handguns, shotguns, and rifles. Although Mr. Wilcox frequented the shooting range, he never received any formal training on handling firearms.

On the morning of April 25, 2022, Mr. Wilcox fatally shot his wife in the back of the head as she sat at the kitchen table. Mr. Wilcox then doused their home with gasoline, set the home on fire, and fled. A few days later, Mr. Wilcox called his son, Jerry Wilcox,[1] from Dell City, Oklahoma, with a new phone he had acquired from Walmart. Mr. Wilcox told Jerry of his location, and Jerry urged Mr. Wilcox to turn

---

[1] Jerry and Kathy are referred to by their first name for clarity. No disrespect is intended.

himself in to law enforcement. Jerry reported the conversation to law enforcement at the conclusion of the call. Mr. Wilcox was later arrested in Oklahoma.

Mr. Wilcox was charged with second degree murder with a firearm enhancement and first degree arson. The charges were tried to a jury. At trial, the State argued Mr. Wilcox intentionally killed his wife and set fire to their home. Mr. Wilcox argued that the shooting was accidental, and the fire was a failed suicide attempt. Testimony was presented that the ammunition that killed Kathy was "a hollow-point bullet called Hornaday Critical Defense." Rep. of Proc. (RP) (Nov. 2, 2023) at 380. Ultimately, the jury found Mr. Wilcox guilty of all counts.

It was discovered before sentencing that at least one of the jurors had conducted outside research during trial. Consequently, Mr. Wilcox brought a motion to set aside the verdict due to the purported misconduct. Particularly, Shawna Morris, a private investigator, reported in a declaration that juror 14 "stated he knew nothing about Horn or something bullets and that he had to look up information on them on his own." Clerk's Papers (CP) at 154. Ms. Morris spoke to juror 14 who stated he had "looked up the critical defense round independently during his lunch break." CP at 154. Juror 8 corroborated that he heard "a juror after lunch say he went home and looked up what exactly a Hornaday critical defense bullet was, and that information was helpful to that juror." CP at 154.

Juror 14 also filed a declaration stating he had "no idea about guns or ammunition." CP at 200. Juror 14 admitted to looking up information "about the Hornaday defense round." CP at 200. Moreover, Juror 14 stated, "[a]s far as the gun discharging accidentally or not, I felt the lead detective was hampered by having the gun zip tied to a box and was unable to fully demonstrate how the Glock could or could not discharge accidentally." RP (Nov. 1, 2023) at 200. Juror 14 did not claim to have conducted outside research on the accidental discharge of a firearm.

Juror 8 submitted a declaration stating:

> During deliberations in this case, another juror went home during lunch and did some research on Hornaday critical rounds and accidental discharge. He informed the jury pool what he had learned. That other juror stated that it was helpful for himself to render a verdict in this case.

CP at 202.

A hearing was held on Mr. Wilcox's motion prior to sentencing. The State and Mr. Wilcox appeared at the hearing and argued their respective positions. Defense counsel informed the court that it provided evidence in the form of written declarations and that two witnesses were present and "willing to testify." RP (Jan. 5, 2024) at 15. Defense counsel stated the witnesses were available "if the Court has additional questions" but noted the declarations were also provided. RP (Jan. 5, 2024) at 20.

4

The court ruled at the conclusion of the hearing that it "would find that there's jury misconduct." RP (Jan. 5, 2024) at 32. Notwithstanding, the court did "not find from it that there is a showing at this point in time that that misconduct had a—any reasonable probability of affecting the outcome of this—the trial." RP (Jan. 5, 2024) at 32. The court therefore denied the motion to set aside the verdict.

Thereafter, the court filed its findings of fact and conclusions of law. The court found that, despite the court's instructions to the contrary, "Juror #14 did outside research, during a recess from court, regarding Hornaday Critical Defense rounds." CP at 234-35. Albeit the court found misconduct, it concluded there had "not been a showing that Juror #14's outside research had a reasonable probability of affecting the outcome of trial." CP at 235. The court found no other instances of juror misconduct. Finally, the court concluded, "there is no reasonable probability that the juror's misconduct affected the outcome of trial." CP at 235.

Mr. Wilcox timely appeals.

ANALYSIS

Mr. Wilcox argues the court applied the incorrect legal standard in determining that he was not prejudiced by the juror's misconduct. We agree that the trial court applied the incorrect legal standard and reverse the order denying Mr. Wilcox's motion.

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantees an accused a fair trial by an impartial jury. "The

5

right of trial by jury means a trial by an unbiased and unprejudiced jury, free of disqualifying jury misconduct." *State v. Tigano*, 63 Wn. App. 336, 341, 818 P.2d 1369 (1991).

We review a trial court's investigation of alleged juror misconduct for abuse of discretion. *State v. Earl*, 142 Wn. App. 768, 774, 177 P.3d 132 (2008). Similarly, we review a trial court's decision to deny a motion for a new trial based on juror misconduct for an abuse of discretion. *State v. Balisok*, 123 Wn.2d 114, 117, 866 P.2d 631 (1994).

A court abuses its discretion when its decision is manifestly unreasonable or exercised on untenable grounds. *Breckenridge v. Valley Gen. Hosp.*, 150 Wn.2d 197, 203, 75 P.3d 944 (2003). A court's "decision is based on 'untenable grounds' or made 'for untenable reasons' if it rests on facts unsupported in the record or was reached by applying the wrong legal standard." *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003) (quoting *State v. Rundquist*, 79 Wn. App. 786, 793, 905 P.2d 922 (1995)). If a trial court applies the incorrect legal standard, we will remand for application of the correct standard. *See Rufer v. Abbott Labs.*, 154 Wn.2d 530, 540, 114 P.3d 1182 (2005).

"A strong, affirmative showing of juror misconduct is required to impeach a verdict." *Richards v. Overlake Hosp. Med. Ctr.*, 59 Wn. App. 266, 271, 796 P.2d 737 (1990). Extrinsic evidence is information outside of the evidence admitted at trial. *Balisok*, 123 Wn.2d at 118. A jury's consideration of extrinsic evidence is misconduct and may warrant a new trial if the defendant has been prejudiced. *Id.*; *State v. Boling*,

6

131 Wn. App. 329, 332, 127 P.3d 740 (2006). "The court's inquiry is an objective one." *Boling*, 131 Wn. App. at 332. The question is whether the extrinsic evidence could have affected the jury's verdict. *State v. Caliguri*, 99 Wn.2d 501, 509, 664 P.2d 466 (1983). This court need not determine the actual effect of the evidence, but any doubts must be resolved against the verdict. *State v. Jackman*, 113 Wn.2d 772, 777-78, 783 P.2d 580 (1989); *State v. Briggs*, 55 Wn. App. 44, 55, 776 P.2d 1347 (1989).

Prejudice is presumed upon a showing of misconduct, but "that 'presumption can be overcome by an adequate showing that the misconduct did not affect the deliberations.'" *State v. Gaines*, 194 Wn. App. 892, 897, 380 P.3d 540 (2016) (quoting *State v. Depaz*, 165 Wn.2d 842, 856, 204 P.3d 217 (2009)). A trial court properly denies a motion for a new trial if "'it is satisfied beyond a reasonable doubt that the extrinsic evidence did not contribute to the verdict.'" *State v. Fry*, 153 Wn. App. 235, 239, 220 P.3d 1245 (2009) (quoting *Boling*, 131 Wn. App. at 333).

Here, the trial court recognized that juror 14's outside research into Hornaday Critical Defense rounds amounted to misconduct. Nevertheless, the court concluded there "has not been a showing that Juror #14's outside research had a reasonable probability of affecting the outcome of trial." CP at 235 ("There is not a reasonable probability that the juror's misconduct affected the outcome of the trial.").

Mr. Wilcox argues the court's finding and conclusion, that there had not been a showing that the juror misconduct affected the verdict, erroneously placed the burden on

him to prove prejudice. We agree. Because juror 14 committed misconduct, prejudice is

presumed, and the burden shifts to the State to demonstrate, to the satisfaction of the trial

court beyond a reasonable doubt, that the extrinsic evidence did not affect the verdict.

*See Fry*, 153 Wn. App. at 239. In this case, the court applied the wrong legal standard

when it determined there was not a *reasonable probability* juror 14's misconduct affected

the verdict and then placed the burden on Mr. Wilcox to prove prejudice instead of on the

State to disprove prejudice beyond a reasonable doubt. Because the court used the

incorrect legal standard, it necessarily abused its discretion.

The State points us to *State v. Caliguri* and argues the court used the correct legal

standard. 99 Wn.2d 501. The State posits that in *Caliguri*, the court rejected a

conclusive presumption of prejudice. Although that is the holding in *Caliguri*, it was in

the context of "communication between judge and jury in the defendant's absence." *Id.*

at 509. The issue in *Caliguri* was whether the court erred in replaying recordings, some

with portions that were excluded at trial, for the jury without the defendant present. *Id.* at

505, 508. The court noted that it "is settled in this state that there should be no

communication between the court and the jury in the absence of the defendant." *Id.* at

508. The issue in *Caliguri* was not framed nor analyzed as a juror misconduct issue. *Id.*

at 508-09.

Here, the issue is specific, and the law is well settled. When a jury commits

misconduct by considering extrinsic evidence, prejudice is presumed, and the State must

prove beyond a reasonable doubt that the defendant was not prejudiced. Consequently, the court here applied the incorrect legal standard when it determined that Mr. Wilcox was not prejudiced.

Both Mr. Wilcox and the State present argument on the merits; specifically, whether juror misconduct prejudiced Mr. Wilcox thereby warranting a new trial. Mr. Wilcox argues juror 14's research into Hornaday Critical Defense rounds was prejudicial. Primarily, he argues that the type of ammunition used was relevant to the issue of whether Mr. Wilcox intentionally or unintentionally shot and killed his wife. He posits the use of a Hornaday Critical Defense round, which is a hollow point type of ammunition, makes it more likely he intentionally killed his wife because hollow point bullets are designed to inflict more damage to the body than other types of ammunition.

The State responds that the trial court properly found juror 14's research regarding Hornaday Critical Defense bullets did not affect the jury's determination of whether or not the discharge of Mr. Wilcox's firearm was intentional or accidental. Moreover, the State points out that the fact that the Hornaday ammunition was a hollow point round was already before the jury.

Fatal to both parties' arguments on the merits is that "[a]n appellate court does not make findings." *Marcum v. Dep't of Soc. and Health Servs.*, 172 Wn. App. 546, 560, 290 P.3d 1045 (2012). Here, because the trial court abused its discretion when it used an incorrect legal standard, we are unable to adequately determine whether, beyond a

9

reasonable doubt, the extrinsic evidence did not affect the verdict.  Accordingly, remand is necessary for the trial court to make findings as to whether it is satisfied beyond a reasonable doubt that the extrinsic evidence did not contribute to the verdict.

Finally, Mr. Wilcox urges this court to reverse his conviction and remand for a new trial based on the trial court's finding of juror misconduct.[2]  We decline his invitation for two reasons.  First, the issue before this court is a direct appeal of the order denying Mr. Wilcox's motion to set aside the verdict.  We review the assigned error for an abuse of discretion not de novo.  The record lacks any findings related to constitutional harmless error, thereby depriving us of the ability to review the alleged error under the abuse of discretion standard.  Reversing Mr. Wilcox's conviction based on this alleged error would require us to engage in a de novo review and decide whether the error was harmless beyond a reasonable doubt.  As an appellate court, we are ill-situated to make such findings.

## CONCLUSION

The trial court applied the incorrect legal standard in denying Mr. Wilcox's motion to set aside the verdict.  We therefore reverse the order denying Mr. Wilcox's motion and remand for a new hearing.

---

[2] Mr. Wilcox argues, in the alternative, that the court held an inadequate evidentiary hearing.  Because we reverse the order denying Mr. Wilcox's motion to set aside the verdict and remand for a new hearing, we decline review of this issue.

No. 40176-6-III
*State v. Wilcox*

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Cooney, J.

WE CONCUR:

_____
Fearing, J.

_____
Staab, A.C.J.