**FILED**
**JUNE 10, 2025**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 40143-0-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LANCE ANDREW STORES, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

COONEY, J. — Lance Stores was charged with child molestation in the first degree and invoked his right to a jury trial. The jury was deadlocked after 2 hours and 18 minutes of deliberations at the conclusion of his first trial, resulting in the court ordering a mistrial. Mr. Stores was later convicted in a second trial.

Mr. Stores appeals, arguing the trial court abused its discretion when it prematurely ordered a mistrial and admitted certain evidence. He further claims his trial attorney was ineffective in not cross-examining the victim and in failing to object to certain evidence. Lastly, Mr. Stores raises three issues in a statement of additional grounds for review (SAG).

Finding no error, we affirm.

BACKGROUND

In 2021, cohabitants Tammie and Lance Stores met Lexi and Nick.[1] Lexi and Nick had recently moved into the neighborhood with their two children, one of whom was their seven-year-old daughter, B.R.S.[2] Shortly thereafter, Tammie began providing childcare for the children.

Tammie babysat both children on July 1, 2022. Mr. Stores returned home from work that evening at approximately 8:00 p.m. He spent much of the evening drinking beer on a bench in front of their residence. B.R.S. and Mr. Stores sat on the bench, covered with a blanket.

Mr. Stores testified that B.R.S. was clinging to him and "just wouldn't leave [him] alone" that evening. Rep. of Proc. (RP) at 830, 832. B.R.S. asked Mr. Stores to tickle her. Mr. Stores responded by poking her in the ribs. B.R.S. showed Mr. Stores what she meant by tickling by running her fingers up his hand. B.R.S. then whispered to Mr. Stores that she wanted to be tickled all over. B.R.S. claimed Mr. Stores tickled her all over, including her "private part." RP at 686, 886. Mr. Stores denied tickling B.R.S. anywhere other than her hand.

---

[1] We refer to witnesses by their last names only unless necessary for disposition of the issue.

[2] B.R.S. is Lexi's biological child only.

Lexi and Nick retrieved the children from Mr. Stores' residence between 10:00 and 11:00 p.m. At Mr. Stores' request, B.R.S. asked her parents if she could stay the night at Mr. Stores' residence. Mr. Stores told B.R.S. to ask her parents because he did not want to appear as the "bad guy" by saying no. RP at 709, 837.

Lexi and Nick questioned B.R.S. when they arrived home. B.R.S. told Lexi that Mr. Stores had touched her "private part." RP at 686. Lexi and Nick reported the incident to law enforcement two days later. Brenda Borders conducted a forensic interview of B.R.S. on July 11, 2022.

Detective Robert Bianchi later questioned Mr. Stores about B.R.S.'s allegation. Mr. Stores reported that B.R.S. was abnormally clingy that evening and characterized her behavior as "promiscuous." RP at 704. Mr. Stores later testified that he did not understand "promiscuous" implied a desire for sexual gratification and thought it simply meant flirtatious. RP at 845. Mr. Stores told the detective that B.R.S. had asked him to tickle her all over, which he believed meant in inappropriate ways. Mr. Stores told Detective Bianchi that B.R.S. said if he refused to tickle her like she wanted, she would tell her parents that he did tickle her. Mr. Stores agreed with Detective Bianchi's characterization of B.R.S.'s conduct that evening as blackmail.

The State charged Mr. Stores with child molestation in the first degree on October 7, 2022. Mr. Stores' first trial began on August 23, 2023. The trial concluded on August 24, 2023, with a question from the jury after 2 hours and 18 minutes of

deliberations, asking, "What should we do if we cannot come to a unanimous decision?" Clerk's Papers (CP) at 130. The court polled the jury in response to the question. Each juror agreed there was not a reasonable probability of reaching a verdict within a reasonable time frame. The court then consulted with the attorneys who agreed the jury was deadlocked. The court ordered a mistrial.

A second trial was held in November 2023. B.R.S. testified for the State, but Mr. Stores' attorney chose not to cross-examine her. Nick testified, in part, that he had offered to pay for Mr. Stores to take a lie detector test and that he "never thought [Mr. Stores] would do something like that." RP at 756. Detective Bianchi testified that Mr. Stores stated B.R.S. was acting promiscuously and characterized Mr. Stores' description of B.R.S.'s behavior toward him as blackmail.

The jury ultimately found Mr. Stores guilty of child molestation in the first degree. Mr. Stores timely appeals.

## ANALYSIS

### MISTRIAL AND EVIDENTIARY RULINGS

Mr. Stores argues the trial court abused its discretion when it prematurely ordered a mistrial, admitted into evidence a recording of B.R.S.'s forensic interview, and overruled his objection to testimony of a polygraph test.

*Mistrial*

We review a trial court's ruling on a mistrial for abuse of discretion. *State v. Emery*, 174 Wn.2d 741, 765, 278 P.3d 653 (2012).

A court "abuses its discretion when it acts on untenable grounds or its ruling is manifestly unreasonable." *State v. Gaines*, 194 Wn. App. 892, 896, 380 P.3d 540 (2016). A "decision is based 'on untenable grounds' or made 'for untenable reasons' if it rests on facts unsupported in the record or was reached by applying the wrong legal standard." *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003) (quoting *State v. Rundquist*, 79 Wn. App. 786, 793, 905 P.2d 922 (1995)). A "decision is 'manifestly unreasonable' if the court, despite applying the correct legal standard to the supported facts, adopts a view 'that no reasonable person would take,' and arrives at a decision 'outside the range of acceptable choices.'" *Rohrich*, 149 Wn.2d at 654 (citation omitted) (quoting *State v. Lewis*, 115 Wn.2d 294, 298-99, 797 P.2d 1141 (1990); *Rundquist*, 79 Wn. App. at 793).

Mr. Stores argues the trial court abused its discretion when it prematurely ordered a mistrial. We decline review of the claimed error.

This court may refuse to review a claim of error that was not raised at the trial court level. RAP 2.5. The purpose of this rule is to give the trial court an opportunity to correct any errors before the case is presented on appeal. *State v. Strine*, 176 Wn.2d 742, 749, 293 P.3d 1177 (2013). "[T]here is great potential for abuse when a party does not object because '[a] party so situated could simply lie back, not allowing the trial court to

5

avoid the potential prejudice, gamble on the verdict, and then seek a new trial on appeal.'" *State v. Weber*, 159 Wn.2d 252, 271-72, 149 P.3d 646 (2006) (quoting *State v. Sullivan*, 69 Wn. App. 167, 172, 847 P.2d 953 (1993)).

After 2 hours and 18 minutes of deliberations, the first jury sent a question to the court, inquiring, "What should we do if we cannot come to a unanimous decision?" RP at 619; CP at 130. The court polled the jury, and each juror agreed there was not a reasonable probability of reaching a verdict within a reasonable amount of time. The court then excused the jury from the courtroom and asked defense counsel, "anything you want to add or position on how to deal with this or—regarding or any motions to make?" RP at 628. Defense counsel responded, "No, Your Honor. I think it's obvious." RP at 628. The court ordered a mistrial and then asked defense counsel, "anything else to add to that?" RP at 631. Defense counsel responded, "Nothing, Your Honor." RP at 631.

Defense counsel's acquiescence to the trial court ordering a mistrial deprived the court of an opportunity to recognize or correct any errors in its ruling. It further allowed Mr. Stores to gamble on the verdict in the second trial and then, if convicted, seek a new trial on appeal. Based on Mr. Stores' failure to object to the court ordering a mistrial, we decline review of his alleged error.

*Forensic Interview of B.R.S.*

Mr. Stores claims the trial court abused its discretion when it admitted a recording of B.R.S.'s forensic interview into evidence. We decline review of the claimed error.

Fatal to Mr. Stores' claimed error is his failure to object to the admission of the recording. After the State moved to admit the recording into evidence, the court looked to defense counsel for a response. Defense counsel responded, "No objection." RP at 762. The court inquired of defense counsel, "No objection?" RP at 762. Defense counsel responded, "Correct." RP at 762.

A failure to object that evidence is inadmissible waives any claimed error on appeal. *State v. Burns*, 193 Wn.2d 190, 211, 438 P.3d 1183 (2019). Because Mr. Stores failed to object to admission of the recorded forensic interview into evidence, we decline review.

*Evidentiary Rulings*

Mr. Stores next argues the trial court twice abused its discretion in overruling objections made to Nick's testimony. We disagree.

Generally, we review a trial court's evidentiary rulings for abuse of discretion. *State v. Duarte Vela*, 200 Wn. App. 306, 317, 402 P.3d 281 (2017). Trial courts have "wide discretion in balancing the probative value of evidence against its potential prejudicial impact." *State v. Coe*, 101 Wn.2d 772, 782, 684 P.2d 668 (1984). "Evidentiary error is grounds for reversal only if it results in prejudice." *City of Seattle v.*

*Pearson*, 192 Wn. App. 802, 817, 369 P.3d 194 (2016). An evidentiary error is prejudicial if "'within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected.'" *State v. Smith*, 106 Wn.2d 772, 780, 725 P.2d 951 (1986) (quoting *State v. Cunningham*, 93 Wn.2d 823, 831, 613 P.2d 1139 (1980)).

The first evidentiary ruling Mr. Stores challenges occurred during his cross-examination of Nick:

> [DEFENSE COUNSEL]: Right. So, you thought you could resolve this with words, and that's why you didn't call the police?
>
> [Nick]: Well, we—we originally—yeah, like I said, I didn't want to believe it, *so we originally offered him that we would pay for a lie detector test if he would take it.*
>
> [DEFENSE COUNSEL]: Objection Your Honor. Nonresponsive.
>
> THE COURT: Overruled.

RP at 753 (emphasis added). Although the objection was to the testimony being nonresponsive to the question, Mr. Stores argues on appeal that evidence of polygraph testing is generally inadmissible.

The facts before us are analogous to those in *State v. Terrovona*, 105 Wn.2d 632, 716 P.2d 295 (1986). In *Terrovona*, a witness made a single comment, speculating that a certain individual was the polygraph examiner. *Id*. at 652-53. On review, the Supreme Court held that "[t]he fact that a jury is merely apprised of a lie detector test is not

necessarily prejudicial if no inference as to the result is raised or if an inference to the result is not prejudicial." *Id*. at 652.

Here, no evidence was admitted of a polygraph examination being administered or of Mr. Stores' acceptance or declination of Nick's offer to submit to a test. Rather, Nick simply commented that he offered to "pay for a lie detector test." RP at 753. Nick's lone remark was insufficient for the jury to infer a polygraph test had been administered or that Mr. Stores refused to take one. Mr. Stores was not prejudiced by Nick's statement.

The second evidentiary ruling Mr. Stores challenges occurred during the State's redirect examination of Nick:

> [STATE]: Describe the feeling. Was it a specific concern that you had?
>
> [NICK]: Not at the moment. It was just—just something wasn't—something—something was up, you know?
>
> [STATE]: But could you put your finger on it?
>
> [NICK]: Not at that time. Like I said, *I never thought that he would do something like that.*
>
> [DEFENSE COUNSEL]: Objection. Non-responsive.
>
> THE COURT: Overruled.

RP at 756 (emphasis added).

Courts generally will not permit testimony that takes the form of an opinion regarding the guilt of the defendant. *State v. Demery*, 144 Wn.2d 753, 759, 30 P.3d 1278 (2001). Notably, Mr. Stores objected to Nick's nonresponsive testimony, not to it being

9

an opinion of guilt. Notwithstanding this deficiency, determining whether testimony is an impermissible opinion on guilt depends on the specifics of the case, the type of witness, the nature of the testimony, the nature of the charges, the type of defense being presented, and the other evidence put before the fact finder. *City of Seattle v. Heatley*, 70 Wn. App. 573, 579, 854 P.2d 658 (1993).

Here, Nick's statement was not an expression of his opinion of guilt. As a lay witness, Nick was testifying about interactions between B.R.S. and Mr. Stores. Nick testified that he felt something was off based on his observations but was unable to determine what was causing the feelings because "[he] never thought [Mr. Stores] would do something like that." RP at 756. The challenged statement did not convey Nick's impression of guilt.

Moreover, Mr. Stores placed similar testimony before the finder of fact prior to the statements he now challenges:

> [DEFENSE COUNSEL]: Alright. So, you didn't have those concerns before this incident, is that correct?
>
> [NICK]: No, I had it—I had—a week or two prior I had some weird kind of feeling, but I kind of just brushed it off, you know? *I didn't think that—I'd never thought something like that would happen.*
>
> [DEFENSE COUNSEL]: Right. So, a week or so before the incident you had these feelings?
>
> [NICK] A little bit. Yeah.

RP at 754 (emphasis added).

10

It was not manifestly unreasonable for the court to overrule Mr. Stores' objection given the context in which the challenged statement was presented and Mr. Stores' introduction of similar evidence. The trial court did not abuse its discretion in overruling Mr. Stores' objection. Further, Mr. Stores is unable to demonstrate that the outcome of the trial would have been materially affected had the alleged error not occurred.

INEFFECTIVE ASSISTANCE OF COUNSEL

Mr. Stores claims he was provided ineffective assistance by his trial attorney when his attorney failed to cross-examine B.R.S. and failed to object to aspects of Detective Bianchi's testimony. We disagree.

Criminal defendants have a constitutionally guaranteed right to effective assistance of counsel. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22; *State v. Lopez*, 190 Wn.2d 104, 115, 410 P.3d 1117 (2018). A claim of ineffective assistance of counsel is an issue of constitutional magnitude that may be considered for the first time on appeal. *State v. Nichols*, 161 Wn.2d 1, 9, 162 P.3d 1122 (2007). Claims of ineffective assistance of counsel are reviewed de novo. *State v. White*, 80 Wn. App. 406, 410, 907 P.2d 310 (1995).

A defendant bears the burden of showing (1) that his counsel's performance fell below an objective standard of reasonableness based on consideration of all the circumstances and, if so, (2) there is a reasonable probability that but for counsel's poor performance the outcome of the proceedings would have been different. *State v.*

11

*McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). If either element is not satisfied, the inquiry ends. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009).

In reviewing the record for deficiencies, there is a strong presumption that counsel's performance was reasonable. *McFarland*, 127 Wn.2d at 335. The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. *Kimmelman v. Morrison*, 477 U.S. 365, 384, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986). When counsel's conduct can be characterized as legitimate trial strategy or tactics, performance is not deficient. *Kyllo*, 166 Wn.2d at 863. A sufficient basis to rebut legitimate trial strategy exists when the defendant demonstrates there is "no conceivable legitimate tactic explaining counsel's performance." *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004).

### *Failure to Cross-Examine B.R.S.*

Mr. Stores argues that he was denied his right to confront a witness against him when his trial attorney failed to cross-examine B.R.S. Specifically, Mr. Stores contends his trial attorney had no reasonable justification for not questioning B.R.S. because her testimony contradicted statements made in the forensic interview and during the first trial.

Fatal to Mr. Stores' claimed error is his failure to demonstrate B.R.S.'s statements differed between the two trials or between the forensic interview and the second trial.

Mr. Stores does not point to where B.R.S.'s alleged inconsistent statements are located in the record but instead, presumes B.R.S.'s credibility would have been impeached merely by his trial counsel engaging in cross-examination. It is not the appellate court's obligation to search through the record to find evidence supporting the appellant's legal argument. *See Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 819, 828 P.2d 549 (1992). Mr. Stores has not demonstrated that his trial attorney was ineffective in not cross-examining B.R.S.

Notwithstanding this deficiency, it was objectively reasonable for defense counsel to decline cross-examining B.R.S. B.R.S. testified to understanding the difference between good and bad touches. Nevertheless, B.R.S. was unable to state where she had been "bad touched" and failed to definitively identify Mr. Stores as the person who had "bad touched" her. Instead, B.R.S. testified that Mr. Stores was sitting next to her when she was touched. B.R.S. did not name Mr. Stores nor expressly identify him as the person who had "bad touched" her.

Mr. Stores' attorney grasped onto these deficiencies during summation. Defense counsel argued that B.R.S. never revealed "what she means by her privates" or where on her body she had been tickled. RP at 896. He highlighted B.R.S.'s numerous responses of "I don't know" to the State's questions and her "hard time identifying the person who supposedly did this." RP at 896.

13

In light of all the circumstances, it was a legitimate trial strategy for trial counsel to refrain from cross-examining B.R.S. Mr. Stores' trial attorney was not deficient in declining to cross-examine B.R.S.

*Failure to Object*

Mr. Stores next argues his trial attorney was ineffective by failing to object to Detective Bianchi's opinions and testimony of Mr. Stores' prior misconduct. We disagree.

The decision to object or not can be a trial tactic. *State v. Stotts*, 26 Wn. App. 2d 154, 165, 527 P.3d 842 (2023). Counsel may choose not to object to avoid highlighting otherwise inadmissible low-value evidence. *Id.* at 166. Therefore, a claim that counsel failed to object to testimony should show the objectionable testimony was central to the State's case. *See State v. Vazquez*, 198 Wn.2d 239, 248, 494 P.3d 424 (2021). The defendant also must show that a failure to object was not merely a trial tactic, and the objection was likely to be successful. *Id.*

Mr. Stores contends that Detective Bianchi twice testified to his opinions of Mr. Stores' statements. The first occurred after Detective Bianchi asked how the tickling began:

> [DETECTIVE BIANCHI]: And [B.R.S.] says no, I want you to tickle me everywhere. And [Mr. Stores] said that that just, to him, meant that he should touch her in inappropriate ways.

14

> *And I was struck by that that he* said, you know, she—he said that she said I want you to touch me everywhere and that he *would immediately think that would be touching private parts, private areas of her body.*

RP at 705 (emphasis added).

The second challenged incident occurred when Detective Bianchi was discussing B.R.S.'s desire to spend the night at Mr. Stores' residence. Detective Bianchi was surprised that Mr. Stores would consider allowing B.R.S. to stay overnight given B.R.S.'s earlier threat of "if you won't tickle me everywhere, I'm going to tell my parents that you did." RP at 706. Detective Bianchi testified:

> [Y]ou're saying that she's blackmailed you a couple of times and wants to have you do inappropriate things. Do you think it's okay to have her spend the night? And he said well, it's not like Tammie and I won't be sleeping with the kids, they'll be out there on this hide-a-bed. *And I thought that was just—obviously, I thought that was just a very bad reaction.*

RP at 709 (emphasis added).

Mr. Stores asserts these statements amounted to improper opinion evidence. However, Mr. Stores does not explain why refraining from objecting was not a legitimate trial tactic. Indeed, defense counsel may have strategically chosen against objecting to avoid highlighting Detective Bianchi's statements. Further, Mr. Stores has failed to show the outcome of the proceedings would have been different but for trial counsel's failure to object.

Mr. Stores next challenges two instances of Detective Bianchi alluding to acts of

prior misconduct.

In the first instance, Detective Bianchi testified:

[DETECTIVE BIANCHI]: Then, he clearly wanted to tell me about what happened that night and I interrupted him about that. I said I don't want you to think this is just about one night, which would have been, we both agreed was the January—July 1st of 2022. And he—and I said I don't want you to think it's just about that and—

[STATE]: And why did you say that?

[DETECTIVE BIANCHI]:—why did I say that?

[STATE]: Yeah.

[DETECTIVE BIANCHI]: Well, there had been indication that there had been more than one night. And so, without getting into what was said, I—I had basically come to believe that this had been going on for a period of time.

[STATE]: So, you wanted to keep it as open as possible?

[DETECTIVE BIANCHI]: Right. And so, I wanted to tell him that. I wanted to let him know that it was not just about one night. It was more.

RP at 703.

Thereafter, Mr. Stores' attorney cross-examined Detective Bianchi:

[DEFENSE]: Just so we can get the timeline correct here, Detective Bianchi, the alleged incident would have been on a Friday night, July 1st, 2022, is that correct?

[DETECTIVE BIANCHI]: That's the incident we ended up talking about. That's the incident we essentially focused on in the charges. I had information that some things had happened prior to that, but they—*the information did not develop very well.*

16

RP at 716 (emphasis added).

Mr. Stores argues he was prejudiced by Detective Bianchi's testimony because it inferred other instances of sexual misconduct. Citing *State v. Saltarelli*, 98 Wn.2d 358, 363, 655 P.2d 697 (1982), Mr. Stores argues that improper evidence of other sexual misconduct is especially prejudicial. We find *Saltarelli* is distinguishable. In *Saltarelli*, the court allowed the State to present testimony of a witness who claimed Saltarelli had also attempted to rape her. *Id.* at 360. The witness testified extensively about the attempted rape and of her escape. *Id.*

Unlike *Saltarelli*, here, the State did not introduce evidence of Mr. Stores engaging in specific acts of sexual misconduct against other victims. Rather, Detective Bianchi alluded to the possibility that misconduct may have occurred on more than one occasion. Further, the State did not follow up on the comment, and the detective dispelled any notion of Mr. Stores having engaged in prior misconduct during Mr. Stores' cross-examination of his testimony.

Mr. Stores fails to establish that his trial attorney's failure to object to acts of prior misconduct was not a trial tactic or that the outcome of the proceedings would have been different but for trial counsel's failure to object.

Mr. Stores did not receive ineffective assistance from his trial counsel.

17

STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW

RAP 10.10(a) allows an appellant to "file a pro se statement of additional grounds for review to identify and discuss those matters related to the decision under review *that* the defendant believes have not been adequately addressed by the brief filed by the defendant's counsel." (Emphasis in original.) Mr. Stores raises three additional grounds for review related to the effectiveness of his trial counsel.

Although a SAG need not refer to the record or provide citation to authority, an appellant is required to inform this court of the "nature and occurrence of the alleged errors." RAP 10.10(c). A SAG cannot be reviewed if the claim is too vague to properly inform us of the alleged error. *State v. Bluehorse*, 159 Wn. App. 410, 436, 248 P.3d 537 (2011). For the following reasons, we decline review of the issues presented in Mr. Stores' SAG.

In his first SAG, Mr. Stores complains that Lexi had a motive to lie that went unchallenged by his trial attorney. This bare assertion does not provide the particularity necessary for our review. Mr. Stores fails to address how this deficiency fell below an objective standard of reasonableness or how the outcome of the proceedings would have been different but for counsel's alleged deficiency.

In his second SAG, Mr. Stores complains his trial attorney should have cross-examined the child forensic expert, Ms. Borders. Again, Mr. Stores fails to explain how

the outcome of the proceedings would have been different but for the lack of cross-examination of Ms. Borders.

In his third SAG, Mr. Stores complains of his trial counsel's failure to call "Clyde" as a witness. SAG at 2. Mr. Stores neglects to address whether his trial attorney's decision was a legitimate trial tactic or how he was prejudiced by the purported deficiency.

Although we decline review of Mr. Stores' SAG, he is not left without a remedy. Mr. Stores may address these purported errors through a personal restraint petition. *McFarland*, 127 Wn.2d at 338.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Cooney, J.

WE CONCUR:

_____
Lawrence-Berrey, C.J.

_____
Staab, J.